ORDER AND JUDGMENT *
PAUL KELLY, JR., Circuit Judge.
After a jury trial, Eric Behrens was convicted on one count of conspiracy to possess with intent to distribute and to distribute methamphetamine, 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), and one count of possession with intent to distribute methamphetamine, 21 U.S.C. §§ 841(a)(1), (b)(1)(C). He was sentenced to 240 months’ imprisonment on each count, to run concurrently, and supervised release of ten years on the first count and six years on the second, also to run concurrently. He appeals his conviction, arguing that the district court erred in denying his motion to suppress and that his waiver of the right to counsel was invalid. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

Background

A. The Traffic Stop
On August 29, 2010, a Minnesota State Trooper observed Mr. Behrens driving a vehicle that appeared to have no rear license plate. 1 R. 69, 71. The trooper initiated a traffic stop, and after exiting his patrol car and walking toward Mr. Beh-rens’ vehicle saw a temporary registration tag from Wyoming in the rear window. 1 R. 69-70. The trooper noticed the tag was extremely faded, torn and tattered, but the expiration date was written in bold marker and was not faded. 1 Supp. R. 29-30. The trooper later testified that in Minnesota temporary tags are “made to fade,” so that when they expire they are “almost unreadable” and easy for law enforcement to identify. 1 Supp. R. 40-41. The trooper noticed that the temporary tag was registered to “Leslie Healy,” and that the *454 driver of the vehicle, Mr. Behrens, was male. 1 Supp. R. 29-30. The trooper also noticed that the tag appeared to be valid for 90 days, which he testified was longer than any period of validity he had ever seen. 1. Supp. R. 30. The trooper testified that he suspected the tag was fake or had been altered, or the vehicle stolen. 1 Supp. R. 36.
After questioning Mr. Behrens and receiving less than satisfactory answers, the trooper arrested him and obtained a warrant to search the vehicle (which Mr. Beh-rens does not challenge). 1 R. 71. The search resulted in the seizure of 160 grams of methamphetamine. Id.
Mr. Behrens moved before trial to suppress all evidence seized as a result of the search of his vehicle. 1 R. 56-57. The district court denied his motion, finding no dispute that the traffic stop was reasonable at its inception, and that the trooper had reasonable suspicion to detain and investigate Mr. Behrens. 1 R. 75-77. The case proceeded toward trial.
B. Mr. Behrens Waives His Right to Counsel
On November 3, 2011, Mr. Behrens filed a motion to continue his trial, set to begin four days later, asserting that his attorney was unprepared to try the case and had been busy with another client’s six-week jury trial. 1 R. 301. The district court denied the motion, noting that Mr. Beh-rens’ trial had been continued multiple times before, and that counsel should have been prepared to try the case by the previous trial date, August 29, 2011. 1 R. 305-07.
On the opening day of trial, Mr. Behrens addressed the court and reiterated his concern that his attorney was unprepared. 4 R. 101-02. He asserted that he (Mr. Beh-rens) had not had adequate time to review discovery materials, that his attorney had not prepared a witness list to his satisfaction, that his attorney had not identified experts to call, and that his attorney’s ineffectiveness would “be [his] downfall.” 4 R. 101-02. The attorney responded, “[T]here are things that I would like to do in this case that I, quite frankly, haven’t done, and there are witnesses that ... I may still try and call that I haven’t yet called or interviewed.” 4 R. 103. When pressed by the court (“I don’t quite know what you’re trying to communicate”), the attorney continued: “[EJvery lawyer wants more time. That’s just the nature of the beast .... I have worked hard in [Mr. Behrens’] case.... I am going to do my best to represent him zealously and aggressively and all of that for the next five or six days.” 4 R. 104. After comments from the government, Mr. Behrens’ attorney elaborated once more:
The witnesses that Mr. Behrens would like me to contact and to work on are witnesses that, as the attorney making the decision in the matter ... I wouldn’t contact them .... I do give my clients a great deal of autonomy. So if it were up to me, I wouldn’t call the witnesses .... If I sit here and I were to make the call as to what witnesses I would talk to or deal with or try to put on, there is one that I have not contacted that I will contact. The rest of them are people that he would like me to contact and put on, and I wouldn’t ordinarily be inclined to do so ....
4 R. 106-07. When asked about the “one” witness, the attorney responded, “[I]t was a witness who was identified off and on. The importance of the witness didn’t really strike me until today. And I will contact that witness tonight.” 4 R. 108.
The court concluded that there had been adequate time for preparation, that the matters Mr. Behrens took issue with were “strategic matters,” and that the trial *455 would proceed. 4 R. 109-10. Mr. Beh-rens then asked for a new lawyer, and his attorney moved to withdraw. 4 R. 110. The court denied the motion, and Mr. Beh-rens, distraught, explained that a witness whose testimony he believed would prove exculpatory was not being called. 4 R. 111. The proceedings continued.
After jury selection, Mr. Behrens asserted his right to proceed without counsel, stating that he was “the only one at this point qualified to represent my life on the line.” 4 R. 295, 297. The court then questioned Mr. Behrens about his decision to ensure it was knowing and voluntary. The court asked Mr. Behrens if he had studied law, which he had not. 4 R. 297-98. The court then conducted a colloquy about the charges, potential penalties involved, and the risks and consequences of self-representation. 4 R. 298-303. Mr. Behrens was advised to reconsider his decision, but he did not relent. 4 R. 303-05. After confirming that his decision was knowing and voluntary, the court appointed Mr. Behrens’ attorney as stand-by counsel. 4 R. 308. In a written order, the district court found that Mr. Behrens’ request for self-representation was unequivocal, timely, and knowing and intelligent. 1 R. 311-14. Mr. Behrens was convicted on two of three charges, and this appeal followed.

Discussion

A. Reasonableness of the Traffic Stop
In reviewing the denial of a motion to suppress, we accept the district court’s factual findings unless clearly erroneous and view the evidence in the light most favorable to the government. United States v. Trestyn, 646 F.3d 732, 741 (10th Cir.2011). The ultimate determination of Fourth Amendment reasonableness is a question of law we review de novo. Id.
A traffic stop is a “seizure” under the Fourth Amendment and is analyzed under the framework set out in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), for investigative detentions. Trestyn, 646 F.3d at 741-42. That framework requires a stop to be justified by objectively reasonable suspicion that the person detained has committed or is about to commit a crime. United States v. De La Cruz, 703 F.3d 1193, 1196 (10th Cir.2013). We look first to whether the detention was justified at its inception, and second to whether the detention was “reasonably related in scope” to the circumstances justifying it. Trestyn, 646 F.3d at 742. Once an officer determines that a traffic violation has not occurred, the driver must be allowed to proceed without further delay. Id.
Mr. Behrens does not challenge the reasonableness of the stop at its inception. Aplt. Br. 20. Instead, he argues that the stop became unreasonable when the trooper’s suspicions should have been dispelled — i.e., when the trooper saw that the car had a valid temporary tag in its rear window and learned that the tag was validly registered to Leslie Healy. Id. at 20, 23.
We cannot agree. Mr. Behrens is correct that continued detention violates the Fourth Amendment when an officer’s suspicions are dispelled, and that we have more than once found as much in cases involving temporary registration tags or missing license plates. See Trestyn, 646 F.3d at 743-44; United States v. Pena-Montes, 589 F.3d 1048, 1054-55 (10th Cir.2009); United States v. Edgerton, 438 F.3d 1043, 1051 (10th Cir.2006); United States v. McSwain, 29 F.3d 558, 561 (10th Cir.1994). But, given the district court’s factual findings, the trooper’s suspicion of a fraudulent temporary tag was not reasonably dispelled in these circumstances. The *456 court credited the trooper’s testimony about his observations of the tag, its condition, and his experience with faded tags being illegally reused. 1 R. 75-76. As such, the trooper had a “particularized and objective basis for suspecting” that the temporary tag was a fake, or that the car was stolen. See United States v. Winder, 557 F.3d 1129, 1133 (10th Cir.2009) (quoting United States v. Cortez, 449 U.S. 411, 417-418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)) (internal quotation marks omitted). The registration to Leslie Healy was not enough to dispel the trooper’s suspicion, and he was justified in questioning Mr. Behrens to determine if he was Healy, or at least had some connection with Healy. Accordingly, continued detention and investigation was reasonable under the Fourth Amendment.
B. Waiver of the Right to Counsel
We review the validity of a waiver of the right to counsel de novo and the underlying factual findings for clear error. United States v. Turner, 287 F.3d 980, 983 (10th Cir.2002). A trial court must be satisfied of three factors before allowing a criminal defendant to exercise his right to proceed pro se: the defendant must voluntarily assert his right to represent himself; the waiver must be knowing and intelligent; and the waiver must be timely. Id.
Mr. Behrens presents two theories as to why his waiver was invalid. First he argues that his waiver was not voluntary because he was forced to choose between appearing pro se or proceeding with unprepared counsel. Aplt. Br. 26-29. He also argues that his waiver was not “knowing and intelligent” because the district court failed to inform him of the nature of the conspiracy charge and possible defenses. Id. at 29-32. We address each theory in turn.
“A defendant forced to choose between incompetent or unprepared counsel and appearing pro se faces ‘a dilemma of constitutional magnitude.’ ” United States v. Padilla, 819 F.2d 952, 955 (10th Cir.1987) (quoting Maynard v. Meachum, 545 F.2d 273, 278 (1st Cir.1976)). Thus, a waiver of the right to counsel is not voluntary if the defendant shows that he was entitled to a substitution of counsel. Id. To be entitled to new counsel, “the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict.” Id. (quoting McKee v. Harris, 649 F.2d 927, 931 (2d Cir.1981)).
Mr. Behrens was not entitled to substitute counsel. There was no conflict of interest, breakdown of communication, or irreconcilable conflict between Mr. Beh-rens and his attorney. And while these grounds for substitution are not exhaustive, their absence supports the district court’s finding that Mr. Behrens’ concerns were primarily strategic; and counsel’s refusal to structure a defense precisely as the defendant directs is not good cause for substitution of counsel. Id. at 956. Mr. Behrens’s case is analogous to Padilla, in which we held the defendant’s complaint that his attorney refused to pursue a particular defense theory was insufficient to warrant substitute counsel, and thus his decision to proceed pro se was voluntary. Id. at 955-56.
We have, however, distinguished in this context between complaints about legal strategy and complaints about preparation. Sanchez v. Mondragon, 858 F.2d 1462, 1466 (10th Cir.1988), overruled on other grounds by United States v. Allen, 895 F.2d 1577 (10th Cir.1990). But while Mr. Behrens complained extensively of his attorney’s lack of preparation, and the attorney asserted he had been preoccupied with *457 other matters, the record does not reflect that he was incapable of providing effective representation. The district court inquired into the details of Mr. Behrens’ complaint as it was required to do. See United States v. Silkwood, 893 F.2d 245, 248 (10th Cir.1989). The exchange that followed indicates that the attorney would have provided constitutionally adequate representation, notwithstanding the disagreement on some aspects of trial strategy and his request for more time to accommodate Mr. Behrens’ requests (with which, in his professional judgment, he did not agree). Counsel was not unfamiliar with the case, as he had represented Mr. Beh-rens since 2010,1 R. 86, filed the motion to suppress, 1 R. 56-57, and planned to call at least two witnesses at trial, 4 R. 134-35. As the dissent notes, the primary evidence of counsel’s claimed unpreparedness is that he had yet to contact one witness whose importance he had not yet realized. Whether this delayed realization was the result of devoting time to other matters or his own misapprehension is not clear. But the record reflects that counsel did have an opportunity to contact that one witness, albeit at the last minute. 4 R. 108. In the reality of trial and uncertain proof, it is not unheard of to contact witnesses during the proceedings, as realizations such as this are made. In our view, counsel could have provided reasonably effective assistance to Mr. Behrens. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Although Mr. Behrens was dissatisfied with his attorney, he does not have an absolute right to counsel of his choice, nor a right to have counsel follow his instructions to the letter. Padilla, 819 F.2d at 956. Because he had the choice of retaining present and competent counsel, Mr. Behrens’ decision to proceed pro se was voluntary. See id. at 955.
Next, Mr. Behrens argues that his waiver was not “knowing and intelligent.” A waiver is knowing and intelligent if the defendant “was reasonably informed by the court of the hazards of self-representation and had sufficient understanding of those hazards.” Turner, 287 F.3d at 984. It is the responsibility of the trial judge to ensure that a waiver is knowing and intelligent. Id. at 983. The judge must ensure that the defendant understands “the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.” Von Moltke v. Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948).
Mr. Behrens asserts that because the district court failed to discuss the nature of his conspiracy charge or any possible defenses with him, his waiver cannot be knowing and intelligent. But we have described the Von Moltke factors listed above as an ideal inquiry, United States v. Willie, 941 F.2d 1384,1388 (10th Cir.1991), and have stated that no precise litany of questions must be asked of a defendant seeking to waive the right to counsel, Turner, 287 F.3d at 983. The relevant inquiry focuses on whether the defendant was “aware of the dangers and disadvantages of self-representation,” considering the record as a whole. See Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); United States v. De-Shazer, 554 F.3d 1281, 1288 (10th Cir.2009).
Having reviewed the record, we are satisfied that Mr. Behrens was aware of the nature of the charges against him and the consequences of his decision to proceed without counsel. While the district court did not suggest any defenses, its failure to *458 discuss that issue on the record does not warrant reversal because the surrounding facts and circumstances indicate that Mr. Behrens understood his rights and the risk he was taking. See Willie, 941 F.2d at 1388-89. The same is true of the district court’s explanation of the conspiracy charge. We note that Mr. Behrens had previously pled guilty to both the conspiracy and one possession charge (later withdrawn), and acknowledged that he understood the nature and elements of both crimes. 2 R. 26. When he entered that plea, the court explained the elements of each crime. 4 R. 1328-24. As the case progressed to trial, the court none too strongly and repeatedly informed Mr. Behrens of the dangers of self-representation. The court followed a model set of questions in its colloquy with Mr. Behrens, see Fed. Judicial Ctr., Benchbook for U.S. District Court Judges 6-7 (6th ed. 2013), and then it allowed him to make his choice. 4 R. 298-308. We find that Mr. Behrens’ waiver of the right to counsel was knowing and intelligent.
AFFIRMED.

 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.