**PUBLISH**
**FOR THE TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 15, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

RANDY ALAN HAMETT,

    Defendant - Appellant.

No. 19-5054

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:18-CR-00002-CVE-1)**
_____

Rick E. Bailey, Conlee, Schmidt & Emerson, L.L.P, Wichita, Kansas, appearing for Appellant.

Jeffrey A. Gallant, Assistant United States Attorney (R. Trent Shores, United States Attorney, with him on the briefs), Office of the United States Attorney for the Northern District of Oklahoma, Tulsa, Oklahoma, appearing for Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **BRISCOE**, and **MATHESON**, Circuit Judges.
_____

**BRISCOE**, Circuit Judge.
_____

Defendant-Appellant Randy Alan Hamett appeals his convictions of kidnapping, possession of a stolen firearm, and possession of firearms while subject to a domestic violence protective order.  Mr. Hamett contends that his mid-trial waiver of his right to

counsel was invalid because it was not made knowingly and intelligently. Exercising

jurisdiction under 28 U.S.C. § 1291, we reverse Mr. Hamett's convictions and remand for

a new trial.

**I**

Mr. Hamett was indicted on four counts: Count 1, kidnapping, in violation of 18

U.S.C. § 1201(a)(1); Count 2, using, carrying, and brandishing a firearm during and in

relation to a crime of violence, in violation of 18 U.S.C. § 924(c); Count 3, possessing

and receiving a stolen firearm and ammunition, in violation of 18 U.S.C. §§ 922(j) and

924(a)(2); and Count 4, possession of firearms and ammunition while subject to a

domestic violence protective order, in violation of 18 U.S.C. §§ 922(g)(8) and 924(a)(2).

ROA, Vol. I at 21–25. The district court dismissed Count 2, and Mr. Hamett proceeded

to trial on the three remaining counts. *Id.* at 30.

Mr. Hamett was represented by counsel throughout much of his jury trial. Near

the end of the government's case-in-chief, however, Mr. Hamett requested a sealed ex

parte hearing, where he discussed with the court, with his counsel present, the possibility

of representing himself.[1] At this hearing, despite stating that he "ha[d] two great

attorneys," Mr. Hamett asked the district court if he could "talk to another attorney . . .

that might be able to answer just some legal [] questions." *Id.*, Vol. III at 15, 17. The

district court denied Mr. Hamett's request and provided him with two options: Mr.

Hamett could "either . . . continue with [his] lawyers who have been appointed to

---

[1] The transcripts of Mr. Hamett's ex parte hearings have been unsealed in the appellate record.

represent [him], or [he] could ask to proceed on [his] own." *Id.* at 17. Mr. Hamett responded by asking a question regarding whether he would be permitted to directly question witnesses himself. *Id.* at 19. The court then suggested another option: Mr. Hamett could "write [questions] out and give them to [his] attorneys," and his attorneys could call witnesses back. *Id.* at 20. After further discussions, the court asked Mr. Hamett if he wanted to represent himself. *Id.* at 24. Mr. Hamett stated that he did not want to represent himself, and the trial resumed. *Id.*

At the conclusion of the government's case-in-chief, Mr. Hamett requested another sealed ex parte hearing with his attorneys and the court. At this hearing, Mr. Hamett asked the court various questions regarding post-conviction relief and his right to appeal. *See id.* at 27–29. He then told the court that he would like to take over his own representation in order to recall various witnesses to demonstrate "untruths." *Id.* at 29–30.

At this point, the court began explaining to Mr. Hamett "certain dangers and possible pitfalls of proceeding pro se." *Id.* at 31. The court explained,

> First of all, do you understand that the reason that counsel are appointed for you, when you cannot afford your own counsel, is that you have the assistance and the expertise of someone learned in the law who knows the rules of procedure and the rules of evidence to assist you at trial? Do you understand that that's why counsel was appointed?

*Id.* Mr. Hamett responded that he understood. *Id.*

Next, the court asked Mr. Hamett if he understood that he was "facing serious penalties" if convicted, "including up to a possible 20 years' imprisonment." *Id.*

3

(question mark omitted).[2]  Mr. Hamett stated that he understood.  *Id.* at 32.  The court

then stated,

> [I]f you proceed pro se, there's a possibility that a number of
> the questions that you ask may be objected to and I may
> sustain the objection. So you're giving up your right to have
> counsel represent you on the understanding that you're going
> to be able to ask all these questions and get answers. I don't
> know if you'll be able to get answers to all your questions
> because I don't know if any of your questions will be
> objected to and how I will rule under the federal rules of
> evidence because I don't know what the questions are. Do
> you understand that?

*Id.*  Mr. Hamett said that he understood.  *Id.*

The court also asked Mr. Hamett if he understood that he would have to make his

own closing argument if he proceeded pro se, and he indicated that he understood.  *Id.*

This exchange followed:

> THE COURT: Do you know what the elements are of each of
> the offenses?
>
> MR. HAMETT: I would like to know the elements of the - -
>
> THE COURT: Well, they're in the instructions, and I'm not
> giving you time to read the entire instruction set now.

*Id.* at 32–33.

Despite Mr. Hamett's request for the elements of the charges, the colloquy

continued.  The court next asked Mr. Hamett, "And you understand that you are not

---

[2] The court's statement regarding the maximum term of imprisonment was
incorrect.  Included in the several charges pending against Mr. Hamett was the charge
of kidnapping, in violation of 18 U.S.C. § 1201(a)(1), which carries a maximum
sentence of life imprisonment.

learned in the law, as you have stated?" *Id.* at 33. Mr. Hamett agreed. *See id.* The court then circled back to the jury instructions, asking, "And I'm sure at this time you don't know what's in the instructions because you haven't read them yet; correct?" *Id.* Mr. Hamett confirmed that he had not yet read the instructions. *Id.* at 34.

The court allowed Mr. Hamett's attorneys to remain as "standby counsel" to "assist [Mr. Hamett] and make objections to instructions." *Id.* The court then warned Mr. Hamett that he may "be at a disadvantage in examining witnesses if [he has] never done it before." *Id.* Mr. Hamett responded, "I feel that, very true." *Id.* at 35. The court also stated that if Mr. Hamett's lawyers would continue to handle the case, "[t]hey would know all of the elements of each charge . . . and how to direct the testimony to the best extent possible based upon [the] theory of defense." *Id.* (question mark omitted). The court asked Mr. Hamett if he understood that he may have a "better chance of acquittal" if represented by counsel, and he confirmed that he did so understand. *Id.* at 36. Mr. Hamett requested time to prepare, noting that he was taking on "quite an endeavor . . . with such a lack of knowledge," but the court denied his request. *Id.* at 37. Mr. Hamett's attorneys confirmed that they did not "want to add anything" to the court's colloquy. *Id.*

At the conclusion of the colloquy, the district court "allow[ed] the pro se representation by" Mr. Hamett, "find[ing] that he is competent [and] understands what's going on." *Id.* at 39–40. The court noted that Mr. Hamett's desire to proceed pro se was "based upon his knowledge of the facts in wanting to ask questions that counsel have not asked for their own strategic reasons." *Id.* at 40. The trial resumed with Mr. Hamett representing himself with the assistance of standby counsel. Mr.

5

Hamett recalled various witnesses and made his own closing argument. *See id.*, Vol. I at 341–375, 392–401. The jury convicted Mr. Hamett on all three counts. *Id.*, Vol. II at 14.

The district court appointed new counsel to represent Mr. Hamett at sentencing. *Id.*, Vol. I at 9. Mr. Hamett's guideline range was life imprisonment, *see id.* at 418, but the court varied downward and sentenced Mr. Hamett to 240 months' imprisonment, followed by five years of supervised release, *id.* at 449–55. Mr. Hamett timely filed a notice of appeal. On appeal, Mr. Hamett argues that the district court failed to determine that his waiver of his right to counsel was knowingly and intelligently made and that, as a result, granting his motion to proceed without counsel was error.

## II

A defendant has the Sixth Amendment right to waive his right to counsel and represent himself in a criminal case. *Faretta v. California*, 422 U.S. 806, 821, 832, (1975). But the waiver must be "an intentional relinquishment or abandonment of a known right or privilege." *United States v. McConnell*, 749 F.2d 1441, 1450–51 (10th Cir. 1984) (quotations omitted). And "[b]efore a court may grant a waiver, it must ensure the defendant is 'aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.'" *Maynard v. Boone*, 468 F.3d 665, 676 (10th Cir. 2006) (quoting *Faretta*, 422 U.S. at 835). We review the validity of a waiver of the right to counsel de novo and the underlying factual findings for clear error, *United States v. Williamson*, 859 F.3d 843, 862 (10th Cir. 2017), and we indulge in every

6

reasonable presumption against waiver, *United States v. Hansen*, 929 F.3d 1238, 1250 (10th Cir. 2019).[3] *See also Von Moltke v. Gillies*, 332 U.S. 708, 723–24 (1948) ("To discharge this duty [of inquiry] properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand.") (footnote omitted).

"In the normal course, we examine whether a defendant has effectively waived his right to counsel under a two-part test." *United States v. Vann*, 776 F.3d 746, 763 (10th Cir. 2015). "First, we must determine whether the defendant voluntarily waived his right to counsel [and] [s]econd, we must determine whether the defendant's waiver of his right to counsel was made knowingly and intelligently." *United States v. Taylor*, 113 F.3d 1136, 1140 (10th Cir. 1997). In this case, Mr. Hamett does not contend that his waiver was involuntary. *See* Aplt. Br. at 12. Therefore, only the second prong is at issue.

As regards the second prong, our cases have recognized that the "tried-and-true method" for a district court to assess whether a waiver is being made knowingly and

---

[3] Our review is de novo notwithstanding the fact that Mr. Hamett did not object to the district court's waiver determination below. *See Hansen*, 929 F.3d at 1248 (reviewing de novo the validity of a waiver of the right to counsel even though "[the defendant] failed to object to the district court's decision to allow him to proceed pro se"). This approach "accords with that taken by at least a plurality of our sister circuits." *Id.* (citing *United States v. Erskine*, 355 F.3d 1161, 1166 (9th Cir. 2004) ("[W]e do not expect pro se defendants to know the perils of self-representation, and consequently, we cannot expect defendants to recognize that they have not been correctly and fully advised, let alone to point out the court's errors.")). It is unrealistic to expect defendants who insist on representing themselves to say in the next breath that their decision is not knowing or intelligent.

7

intelligently is to "conduct a thorough and comprehensive formal inquiry of the defendant on the record." *Vann*, 776 F.3d at 763 (quotations omitted). This "formal inquiry typically takes place in the context of a waiver hearing, customarily referred to as a *Faretta* hearing." *Hansen*, 929 F.3d at 1249. *Faretta* hearings are intended to ensure that "the defendant is not unwittingly or impulsively disposing of his constitutional right to counsel." *Vann*, 776 F.3d at 763.

A proper *Faretta* hearing apprises the defendant of the following: "the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Hansen*, 929 F.3d at 1250 (quoting *United States v. Weninger*, 624 F.2d 163, 164 (10th Cir. 1980)) (emphasis omitted) (noting that these factors are known as the "*Von Moltke* factors," as such areas of inquiry are taken from the Supreme Court's opinion in *Von Moltke*, 332 U.S. at 724). As is relevant here, one of the facts essential to the defendant's understanding of the entire matter is his "understanding that he would need to follow the applicable procedural and evidentiary rules." *Id.* at 1257. Importantly, this court has reiterated that the *Von Moltke* factors "must be conveyed to the defendant *by the trial judge* and must appear on the record so that our review may be conducted without speculation." *United States v. Padilla*, 819 F.2d 952, 957 (10th Cir. 1987) (emphasis in original).

The Supreme Court has held that "the requisite thoroughness of the district court's inquiry into the relevant factors should be viewed through a 'pragmatic'

8

lens—that is, the degree of thoroughness should correspond to how 'substantial' and 'obvious' the dangers of self-representation are at any particular stage of the criminal proceedings." *Hansen*, 929 F.3d at 1250 (quoting *Patterson v. Illinois*, 487 U.S. 285, 298, 299–300 (1988)). "At one end of the spectrum, we have concluded there is no Sixth Amendment right to counsel whatsoever at a postindictment photographic display identification, because this procedure is not one at which the accused requires aid in coping with legal problems or assistance in meeting his adversary." *Patterson*, 487 U.S. at 298 (quotations and alteration omitted). This case falls "[a]t the other extreme." *Id.* Given the "enormous importance and role that an attorney plays at a criminal trial, we have imposed the most rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting him to waive his right to counsel at trial." *Id.*; *see Hansen*, 929 F.3d at 1250 (noting that the warnings of the pitfalls of proceeding to trial without counsel must be rigorously conveyed). Such rigorous restrictions are necessary because "at trial, counsel is required to help even the most gifted layman adhere to the rules of procedure and evidence, . . . examine and cross-examine witnesses effectively (including the accused), object to improper prosecution questions, and much more." *Patterson*, 487 U.S. at 300 n.13. Considering counsel's pivotal and demanding role at trial, we cannot subscribe to the dissent's reasoning that the "requirements of *Faretta* hearings are logically less onerous in cases like this one." Dissent at 3. Rather, it is in precisely this case—where a defendant requests to proceed without counsel "at trial"—that the requirements of *Faretta* hearings are the *most* rigorous.

9

*Patterson*, 487 U.S. at 298. And here, Mr. Hamett's mid-trial request to waive counsel came at a critical point—immediately prior to the presentation of his defense, his own case-in-chief.

Nonetheless, we also recognize that the Supreme Court has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). Consistent with the Supreme Court's approach,

> we have recognized that, though it is certainly true that the *Faretta* hearing is one way—probably the best way—for the district court to satisfy itself that defendant's waiver of a right to counsel was done intelligently, a *Faretta* hearing is only a means to [an] end of ensuring a voluntary and intelligent waiver, and the absence of that means is not error as a matter of law.

*Hansen*, 929 F.3d at 1251 (quotations omitted, alteration in original). In other words, while a *Faretta* hearing which apprises a defendant of the *Von Moltke* factors is generally a sufficient condition to a knowing waiver, it is not a necessary condition. *Id.* Accordingly, there are "certain limited situations . . . where a waiver may be valid even when the inquiry by the court is deficient." *Vann*, 776 F.3d at 763 (quotations omitted). In particular, such may be true when "surrounding facts and circumstances indicate that the defendant 'understood his right to counsel and the difficulties of pro se representation'" at the time of the waiver. *United States v. Turner*, 287 F.3d 980, 983 (10th Cir. 2002) (quoting *United States v. Willie*, 941 F.2d 1384, 1389 (10th Cir. 1991)).

10

Given this framework, we first analyze whether the district court's warnings regarding Mr. Hamett's self-representation were adequate to establish his knowledge and understanding of the factors articulated in *Von Moltke*. *See Hansen*, 929 F.3d at 1258, 1262–63. Because we conclude that the court's warnings were inadequate, we then consider whether there are case-specific factors present here that would permit us to conclude that the district court nevertheless correctly determined that Mr. Hamett's waiver of his right to counsel was knowing and intelligent when it was made. *See id.* at 1262–63.

### III

### A

Mr. Hamett contends that the district court's warnings regarding his self-representation were deficient because, prior to allowing him to waive counsel, the district court failed to confirm on the record that Mr. Hamett knew: (1) the charges against him; (2) the maximum punishments he might receive if convicted; (3) the available defenses to the charges; and (4) his obligation to comply with federal evidentiary and procedural rules. Aplt. Br. at 16. After review of the transcripts, we agree with Mr. Hamett that the district court's warnings failed to ensure that he was aware of the import of his waiver or the dangers of self-representation.

To begin, the district court failed to apprise Mr. Hamett of the nature of the charges against him. As far as the record discloses, the district court did not discuss with Mr. Hamett any of the charges against him during either ex parte hearing. Moreover, the court's exchange with Mr. Hamett regarding the elements of the

11

offenses provides further indication that the colloquy was deficient. When asked if he knew the elements of each of the offenses, Mr. Hamett stated that he would "like to know the elements." ROA, Vol. III at 33. The district court, however, responded that the elements were "in the [jury] instructions" and that Mr. Hamett would not be given "time to read the entire instruction set" at that time, which was prior to his deciding whether to waive counsel. *Id.* Despite this, the government suggested at oral argument that we may presume Mr. Hamett was aware of the charges based on his initial appearance or an off-the-record conversation with his attorneys. We disagree. "This court has reiterated that the factors articulated must be conveyed to the defendant *by the trial judge* and must appear on the record so that our review may be conducted without speculation." *Padilla*, 819 F.2d at 957 (emphasis in original). While we could assume that the usual Rule 5 arraignment procedures were followed in this case, we need more than that to assure ourselves that Mr. Hamett was advised and fully aware of the charges against him at this pivotal time—when he was deciding whether to waive his right to counsel and proceed pro se. That showing must be apparent from the record. Nothing in the record presented shows that Mr. Hamett was informed of the nature of the charges against him.

The dissent makes a similar argument, which suffers from the same defects. According to the dissent, "[u]nlike in a pre-trial or even an early-trial *Faretta* hearing, here we can assume the defendant was familiar with the charges against him." Dissent at 3–4; *see also id.* at 4 (asserting, without record support, that "Mr. Hamett surely knew, at least broadly speaking, the background factors set forth in

12

*Von Moltke*" and that "conveying [the *Von Moltke* factors] is necessarily easier, and requires less, when the factors are already obvious to the defendant, as they were here"). As noted, however, we cannot assume that Mr. Hamett was aware of any of the *Von Moltke* factors. *See Padilla*, 819 F.2d at 957 (holding that our review is to be conducted "without speculation"). And, in our view, the record overwhelmingly demonstrates that several of the *Von Moltke* factors were *not* obvious to Mr. Hamett at the time he waived counsel, including the nature of the charges. *See, e.g.*, ROA, Vol. III at 31–33 (Mr. Hamett requesting the elements of the offenses and concurring with the district court's incorrect recitation of the applicable maximum penalty). We therefore decline to adopt some lesser standard set forth by the dissent, again considering that we are to impose "the most rigorous restrictions on the information that must be conveyed to a defendant . . . before permitting him to waive his right to counsel at trial." *Patterson*, 487 U.S. at 298.

Turning next to the district court's inquiry regarding potential penalties, we conclude that the colloquy also failed to adequately apprise Mr. Hamett of the potential punishment he faced if convicted. The district court informed Mr. Hamett that he was "facing serious penalties" if "convicted of any of the counts, including up to a possible 20 years' imprisonment," which Mr. Hamett stated he understood. ROA, Vol. III at 31–32 (question mark omitted). This information was inaccurate, as the kidnapping charge carries a maximum of life imprisonment. *See* 18 U.S.C. § 1201(a). The government—and the dissent—contend that the court's colloquy was not deficient because informing Mr. Hamett of a twenty-year sentence "was significant

13

enough to emphasize the seriousness of the offenses he faced," given that Mr. Hamett was sixty-two years old at the time of trial. Aple. Br. at 35; *see* Dissent at 8. But warning Mr. Hamett that he may face a twenty-year sentence is not the same as apprising him of the actual "range of allowable punishments," *Willie*, 941 F.2d at 1388, as required for a proper *Faretta* hearing. And we cannot consider the difference between the possibility of spending the rest of one's life in prison, as opposed to only twenty years, to be "immaterial." Dissent at 8.[4]

Furthermore, we conclude that the transcript demonstrates that the district court failed to apprise Mr. Hamett of any possible defenses. The government seems to acknowledge as much, *see* Aple. Br. at 32 (noting that the court "did not specifically inquire into certain legal topics, such as possible defenses"), but relies on an unpublished case, *United States v. Behrens*, 551 F. App'x 452 (10th Cir. 2014), to argue that the court's failure to cover such topics does not render Mr. Hamett's waiver invalid. In *Behrens*, we did conclude that the defendant's waiver was

---

[4] It is true, as the dissent points out, that Mr. Hamett stated, "[A]s you put it, this is my life so I'm not going to play games." ROA, Vol. I at 338; *see* Dissent at 8. Importantly, however, Mr. Hamett did not make this statement in response to the district court's inquiry regarding the maximum penalty he faced. Instead, he was responding to the district court's instructions regarding how to proceed if he "change[d] [his] mind" about proceeding pro se. ROA, Vol. I at 338. When directly asked if he understood that he was facing a maximum penalty of only twenty years' imprisonment, he concurred. *See id.*, Vol. III at 31–32. The statement on which the dissent relies is therefore, at best, ambiguous and unclear as to whether Mr. Hamett understood the maximum penalty he faced if convicted. Such statements are insufficient for us to conclude that the waiver was knowing and intelligent. *See Hansen*, 929 F.3d at 1260 (holding that "ambiguous and unclear responses in the *Faretta* hearing . . . required" the district court "to do more to ensure that [the defendant's] waiver of counsel was knowing and intelligent").

14

knowing and intelligent even though "the district court did not suggest any defenses."

*Id.* at 457. Unlike Mr. Hamett, however, the defendant there "acknowledged that he

understood the nature and elements of both crimes," and the district "court followed a

model set of questions in its colloquy." *Id.* at 458. Therefore, the "surrounding facts

and circumstances" that permitted us to conclude that the defendant's waiver was

valid in *Behrens* are not present here. *Id.*[5]

The government also points us to general warnings the district court gave to

Mr. Hamett about the dangers he faced by waiving his right to counsel to argue that

the colloquy was sufficient to establish that his waiver was knowing and intelligent.

*See* Aple. Br. at 30–31.[6] We are not persuaded. In *Hansen*, we rejected the

government's argument that the district court's "general warnings . . . about the

---

[5] As for Mr. Hamett's contention that the district court failed to adequately inquire about his understanding of his obligation to comply with the federal rules of procedure and evidence, we disagree. The district court referred to the benefit of counsel's understanding of the rules of procedure, which Mr. Hamett stated he understood, and advised him that the court would rule on objections to his questions under the federal rules of evidence, which he also stated he understood. ROA, Vol. III at 31–32. While the court's inquiry on this point could have been more direct, "[n]o precise litany is prescribed" for a court's knowing-and-intelligent inquiry. *Padilla*, 819 F.2d at 959. Although we underscore that no precise litany of questions is required, this court, and the Supreme Court, have acknowledged that the Benchbook for U.S. District Court Judges provides helpful information regarding topics that are appropriate and important for trial courts to delve into when assessing the knowing and intelligent nature of a defendant's waiver of counsel. *See Hansen*, 929 F.3d at 1257–58.

[6] *See, e.g.*, ROA, Vol. III at 33 ("And you understand that you are not learned in the law, as you have stated?"); *id.* at 36 ("Do you understand that you might have a better chance of acquittal if counsel represented you rather than you undertaking the rest of your representation?").

15

dangers [the defendant] faced by waiving his right to counsel" could ensure that his waiver was knowing and intelligent. 929 F.3d at 1262. There, the district court advised the defendant prior to waiving counsel that "tax matters can be complicated" and that he "would be well advised to have counsel to represent [him]." *Id.* at n.8. We reasoned that the district court's general warnings did "not serve to dispel [the] concern about whether the district court's communications with [the defendant] properly warned him about one important, *specific* obligation of self-representation— the obligation to personally adhere to federal procedural and evidentiary rules." *Id.* at 1262 (emphasis added). Similarly here, the district court's general warnings fail to demonstrate that Mr. Hamett was warned of the specific dangers of self-representation. Mr. Hamett was not warned of the magnitude of the penalty he faced (life imprisonment); the precise charges he would be required to defend against; or potential defenses against those charges. According to the dissent, these "shortcomings . . . with the *Faretta* colloquy can be attributed to . . . Mr. Hamett," because he requested to proceed pro se in the middle of trial. Dissent at 9. Yet, our cases make clear that "[t]he task of ensuring that [the] defendant possesses the requisite understanding initially falls *on the trial judge*, who must bear in mind the strong presumption against waiver." *Padilla*, 819 F.2d at 956 (emphasis added); *see Von Moltke*, 332 U.S. at 723 ("The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining

16

whether there is an intelligent and competent waiver by the accused.") (quotations omitted).

Thus, we conclude that the district court's warnings failed to establish Mr. Hamett's knowledge and understanding of several of the relevant factors articulated in *Von Moltke*. *See Padilla*, 819 F.3d at 957 (concluding that the defendant's waiver of counsel was not knowing or intelligent where "[t]he district court, as far as the record discloses, did not inform [the defendant] of the nature of the charges against him, the statutory offenses included, or the possible range of punishment"). "[T]he consequence of this failing is to cast grave doubt on whether [Mr. Hamett's] waiver of the right to counsel was knowing and intelligent." *Hansen*, 929 F.3d at 1262. As noted, however, we have held that there are "certain limited situations . . . where a waiver may be valid even when the inquiry by the court is deficient." *Vann*, 776 F.3d at 763 (quotations omitted). Therefore, we turn to consider whether there are case-specific factors that would permit us to conclude that, despite the inadequate colloquy, Mr. Hamett's waiver of his right to counsel was knowing and intelligent when it was made. *See Hansen*, 929 F.3d at 1262–63. After careful consideration of the record, we discern no such case-specific factors.

**B**

"The information a defendant must possess in order to make an intelligent election . . . will depend on a range of case-specific factors, including the defendant's education or sophistication . . . ." *Tovar*, 541 U.S. at 88. In this regard, we previously have held that—"in light of a defendant's experience with the criminal

17

justice system, education, or other like circumstances—even where the trial court's warnings regarding self-representation were inadequate, the court correctly determined that the defendant's waiver of the right to counsel was knowing and intelligent at the time it was made." *Hansen*, 929 F.3d at 1263. For instance, in *United States v. Hughes*, 191 F.3d 1317 (10th Cir. 1999), we concluded that the defendant's waiver of counsel was valid even though the "court did not conduct a colloquy regarding [his] waiver" where the defendant was "a practicing attorney." *Id.* at 1321, 1324. We have also concluded that a defendant's waiver was valid despite a deficient colloquy where the record demonstrated that the defendant, who "had attended two and one half years of law school," had read "the entire indictment and asserted that he understood it; that he had already begun work on his defense and was aware of the witnesses that the government would present and had made plans to call his own; and that he was aware of the seriousness of the penalty he faced." *McConnell*, 749 F.2d at 1451.

Moreover, we "have effectively recognized that a defendant's pretrial litigation conduct could constitute a case-specific factor that would permit a reviewing court to conclude that the district court correctly determined that the defendant's waiver was knowing and intelligent at the time it was made, despite the court's inadequate warnings regarding self-representation." *Hansen*, 929 F.3d at 1263–64 (citing *Willie*, 941 F.2d at 1389). In *Willie*, we concluded that the defendant's waiver was knowing and intelligent, despite the district court's inadequate warnings, where the defendant "submitted at least ten pretrial *pro se*

18

petitions to the court, including amended pleadings, a motion to deny the government's request for reciprocal discovery, a Petition in Abatement, two Motions to Dismiss, and two sets of jury instructions." 941 F.2d at 1389.

Here, Mr. Hamett argues, and we agree, that there are no case-specific factors demonstrating that his waiver of counsel was knowing and intelligent at the time it was made despite the deficient colloquy. *See* Aplt. Br. at 24.

Focusing first on case-specific factors such as Mr. Hamett's experience with the criminal justice system, education, and pretrial litigation conduct, these factors cut against a conclusion that the district court correctly determined that his waiver of his right to counsel was knowing and intelligent when it was made. Unlike the defendants in *Hughes* and *McConnell*, Mr. Hamett had no formal legal training and no prior experience with criminal trials. *See, e.g.*, ROA, Vol. I at 397 (Mr. Hamett stating during closing arguments that he is "a carpenter, equipment operator by trade"); *id.*, Vol. III at 15 (Mr. Hamett stating at the first ex parte hearing that he was in "uncharted ground [that] . . . is not [his] expertise" and that he had "never been in any kind of trouble like this in [his] life").[7] Thus, as in *Hansen*, there is simply "no

---

[7] This case also differs from *McConnell* in other respects. Rather than being "aware of the seriousness of the penalty he faced," *McConnell*, 749 F.2d at 1451, the record shows that Mr. Hamett was informed of the wrong penalty, ROA, Vol. III at 31. The record in this case also fails to "disclose[]" that Mr. Hamett "had read the entire indictment and asserted that he understood it," "that he had already begun work on his defense," or that he had "made plans to call his own [witnesses]." *McConnell*, 749 F.2d at 1451. To the contrary, the record indicates that Mr. Hamett was unaware of the elements of the charges prior to waiving counsel, *see* ROA, Vol. III at 32–34, and that he was unprepared to question witnesses, *see id.* at 40, 42 (Mr.

indication from the record or the parties' arguments that [Mr. Hamett's] education offered him any meaningful insight into the rigors of a criminal trial." 929 F.3d at 1264 (reversing the district court's waiver determination). Further, the record does not indicate that Mr. Hamett made any pro se filings prior to trial. *See* ROA, Vol. I at 1–13; *cf. Willie*, 941 F.2d at 1389, 1391. These factors weigh against the conclusion that Mr. Hamett's waiver of his right to counsel was knowing and intelligent when it was made.

We acknowledge that the government urges us to consider another case-specific factor that it believes could militate in favor of a determination that Mr. Hamett's waiver of his right to counsel was knowing and intelligent when it was made—that is, Mr. Hamett's conduct at trial *after* his waiver of counsel. *See* Aple. Br. at 37–38. Specifically, the government states that Mr. Hamett's discussion in his closing argument regarding his lack of "willfulness" and the lack of sufficient "proof" "demonstrate[s] he was aware of what the government needed to prove to convict him." *Id.* at 37; *see also* Dissent at 7 (concluding that Mr. Hamett's "examination of witnesses and closing argument . . . demonstrates some level of understanding" of the elements of the crimes). We conclude, however, that Mr. Hamett's trial conduct provides no basis for us to determine that the district court correctly found his waiver to be knowing and intelligent when it was made.

---

Hamett asking the court during the second ex parte hearing how "to ask a question of [the witnesses]" and if he could choose the order in which to call witnesses).

20

The primary flaw in the government's argument is that it ignores the temporal component of a valid waiver. To be valid, Mr. Hamett's waiver must have been knowing and intelligent "at the *time it was made*." *Hansen*, 929 F.3d at 1269 (emphasis added). Even assuming that a defendant's post-waiver conduct could somehow be material to this inquiry,[8] the government, and the dissent, fail to explain here, as in *Hansen*, how Mr. Hamett's "control of his own defense and purported pursuit of a valid defense could tell us anything . . . about whether the district court correctly determined that, *at the time of his waiver* of the right to counsel, . . . [his] waiver was knowing and intelligent." *Id.* at 1268–69 (emphasis added). As far as the record discloses, at the time Mr. Hamett waived counsel, he indicated that he was unaware of the elements of the charges and confirmed that he had not yet read the jury instructions. *See* ROA, Vol. III at 33–34. What Mr. Hamett knew after his waiver—at a time when he *had* read the instructions containing the elements of the offenses—is irrelevant here. *See id.*, Vol. I at 399 (Mr. Hamett stating in his closing

---

[8] As noted in *Hansen*, it is an "open question" in this circuit "whether a defendant's trial conduct is material to the inquiry into whether a district court correctly concluded that a defendant's [] waiver of his right to counsel was knowing and intelligent at the time it was made." 929 F.3d at 1268 (assuming, without deciding, "that such trial conduct could be material"). "[A]t least one circuit has concluded that such conduct is categorically immaterial." *Id.* at n.10; *see United States v. Balough*, 820 F.2d 1485, 1489 (9th Cir. 1987) ("The government also argues that [the defendant] represented himself well . . . Even if true, this is irrelevant to show that [the defendant] understood the dangers and disadvantages of self-representation at the time he sought to waive his right to counsel."). While we are dubious that such conduct could be material, we assume, without deciding, that it could be, as Mr. Hamett's conduct here does not favor a determination that his waiver was knowing and intelligent when it was made.

21

argument that "[t]he kidnapping *instruction says* that the defendant *willfully* transported the . . . person") (emphasis added).[9]  Rather, Mr. Hamett's trial conduct shows, at most, that he was made aware of the elements of the offenses at some point after waiving counsel.  Therefore, we conclude that—even assuming that we may consider trial conduct as evidence of his understanding at the time of his waiver—it does not demonstrate that the district court correctly determined that his waiver was knowing and intelligent at the time it was made.

We also reject the government's other contentions relating to the case-specific factors here.  Specifically, we disagree with the government's suggestion that the appointment of standby counsel cured the district court's inadequate colloquy.  *See* Aple. Br. at 38.  While we have held "that appointment of standby counsel is preferred," we have also "emphasize[d] that the presence of advisory counsel in the courtroom or the defendant's acquiescence in counsel's participation does not, by itself, relieve the district court of its responsibility to ensure that defendant's waiver of counsel is knowingly and intelligently made."  *Padilla*, 819 F.2d at 959–60.  The government also argues that the district court "had no choice but [to] allow [Mr.] Hamett to represent himself" because he "almost certainly would have appealed the

---

[9] We note that the government's argument regarding Mr. Hamett's knowledge of the elements, as purportedly evidenced by his trial conduct, relates only to a single element of the kidnapping charge.  The government does not attempt to explain how Mr. Hamett's trial conduct demonstrates that he knew the other elements of the kidnapping charge; the other charges he was facing; or the elements of the other charges.  The government also fails to explain how Mr. Hamett's trial conduct demonstrates that he knew the other risks of proceeding pro se, such as the maximum penalty he faced if convicted.

*denial* of his request." Aple. Br. at 38 (emphasis in original). This argument, and the dissent's suggestion that the waiver was valid because the district court provided Mr. Hamett with the "latitude he sought," Dissent at 9, both miss the point. Here, the district court granted Mr. Hamett's request, and, *prior* to doing so, it was required to ensure that Mr. Hamett was aware of the dangers and disadvantages of self-representation. *See Williamson*, 859 F.3d at 862 (holding that "[b]efore a court may grant a waiver, it must ensure the defendant is aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open") (quotations omitted, alteration in original). If the district court can satisfy *Faretta* by merely giving a defendant "what he wants," i.e., self-representation, then there is no standard to satisfy.

In sum, considering the rigorous restrictions on the information that must be conveyed to a defendant before permitting him to waive counsel at trial, we conclude that the district court's warnings did not adequately ensure that Mr. Hamett was aware of the dangers and disadvantages of self-representation. We also hold that there are no case-specific factors permitting us to conclude that, despite the inadequate warnings, the district court nevertheless correctly determined that Mr. Hamett's waiver of his right to counsel was knowing and intelligent when it was made. Accordingly, we must conclude that the district court erred in finding that Mr. Hamett knowingly and intelligently waived his right to counsel.

23

**IV**

For the foregoing reasons, we REVERSE Mr. Hamett's convictions and REMAND for a new trial.

19-5054, *United States v. Hamett*
Tymkovich, Chief Judge, dissenting

I conclude the district court adequately informed Mr. Hamett of the dangers of self-representation. Our precedents require a trial court to make sure a criminal defendant is aware of the dangers of self-representation, and they require us to review the lower court's statements through a pragmatic lens to be sure that it properly conveyed those dangers. But our cases do not require a judge to use a specific script. A pragmatic reading of the record suggests the district court adequately warned Mr. Hamett of the dangers of self-representation and, when he insisted he wanted to proceed pro se, gave him *exactly* the latitude he sought to direct his own defense. I accordingly dissent.

Randy Hamett broke into the home of his ex-wife by evading a security system, tased her from behind, and held her at gun point while threatening to kill her and others. He then bound her with zip ties, kidnapped her, and, during the ensuing 27 hours of terror, sexually assaulted her twice en route from Oklahoma to Arkansas. During the ordeal, the victim, while fearing for her life and others' the entire time, told Mr. Hamett that they could remarry as a ruse to buy time for the police to become aware of her plight. Her plan worked, and she was rescued from a hotel in Arkansas.

Mr. Hamett was indicted and tried for related kidnapping and gun crimes. As with any defendant, he was advised of the charges against him, and the indictment was provided to him and his lawyers. The government supplied Mr.

Hamett two experienced trial lawyers who, we can safely assume, worked with him in preparing his defense and potential testimony.

During the first day of the two-day trial, Mr. Hamett became frustrated with those lawyers. Only on the second day of trial and after the direct and cross-examination of his ex-wife did he advise the court that he wanted to represent himself. After a *Faretta* hearing he changed his mind. Then, after the government rested, he renewed his request to represent himself, with the ostensible reason that he wanted to question his ex-wife about her statements to him concerning travel to Arkansas to get remarried. The majority recounts the second *Faretta* hearing in some detail that I need not repeat. Suffice it to say, my interpretation of the events leading to the district court's ruling is that Mr. Hamett knew full well the nature of the charges against him, the elements of the crimes, and a line of defense that he wished to pursue during his case-in-chief. And judging by the questions he posed to his distraught ex-wife, it is clear he was challenging her credibility and advancing a theory that he did not willingly engage in kidnapping since she was not coerced into traveling to Arkansas. In fact, I read the record to suggest his conduct was a knowing and intelligent attack on the victim and a manipulation of the judicial process.

As we have observed, "[a] lawyer cannot be forced upon a defendant who wishes to waive his right to counsel[,] *even if self-representation would be*

*detrimental.*"  *United States v. Turner*, 287 F.3d 980, 983 (10th Cir. 2002) (emphasis added) (citing *Faretta v. California*, 422 U.S. 806, 834 (1975)). Moreover, as the majority has noted, the Supreme Court has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel."  *United States v. Hansen*, 929 F.3d 1238, 1251 (10th Cir. 2019) (quoting *Iowa v. Tovar*, 541 U.S. 77, 88 (2004)).  That no specific formula would be necessary makes more sense in this unusual mid-trial context.

In light of this flexible standard and the district court's substantial (even if imperfect) warnings to the defendant, I do not believe we should credit Mr. Hamett's request for a judicial do-over.  It is rare, after all, that a criminal defendant first decides to represent himself mid-trial and then challenges his conviction on the basis of having his request granted.  But it is not without precedent. *E.g.*, *Wilson v. Hurt*, 29 Fed. App'x 324, 329 (6th Cir. 2002) (holding a mid-trial switch to self-representation did not violate a habeas petitioner's Sixth Amendment rights where the state court advised him to not undertake his own defense, required counsel to remain on standby, advised the defendant of his responsibilities, and informed him he would need to follow the federal rules of evidence).

The non-formulaic requirements of *Faretta* hearings are logically less onerous in cases like this one.  Unlike in a pre-trial or even an early-trial *Faretta*

hearing, here we can assume the defendant was familiar with the charges against him, the government's theory of the case, and his counsel's plan of defense. After all, he was present when the indictment was read to the jury; he sat through the entirety of the government's case-in-chief, including its examination of the victim; and he told the district court he disagreed with his counsel's plan. The morning he twice asked to represent himself he was also witness to his defense counsel's half-time motion for acquittal under Federal Rule of Criminal Procedure 29, in which it was argued that the government had failed to establish the requisite *mens rea* to commit kidnapping.

The fact that Mr. Hamett surely knew, at least broadly speaking, the background factors set forth in *Von Moltke* because of his experience at trial does not, as the majority points out, excuse the district court from conveying those factors in a general sense. *See Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948) (listing the factors); *United States v. Padilla*, 819 F.2d 952, 957 (10th Cir. 1987) (stating "the factors articulated must be conveyed to the defendant *by the trial judge* and appear on the record"). Still, conveying them is necessarily easier, and requires less, when the factors are already obvious to the defendant, as they were here. If the ultimate purpose of our appellate review of a *Faretta* hearing is to be sure that the trial court properly conveyed to the criminal defendant "the magnitude of the undertaking and the hazards inherent in self-representation,"

-4-

*Padilla*, 819 F.2d at 956, there is necessarily some subjective element baked into the requirements of *Faretta* that can excuse deviations from a script. That is the case here.

The district court opened the second *Faretta* colloquy by emphasizing the "dangers and possible pitfalls of proceeding *pro se*." R. at 31:5. The court also noted that Mr. Hamett lacked his appointed counsel's expertise in the rules of evidence and procedure, and it underscored the seriousness of this point by speculating that Mr. Hamett might not obtain answers to the questions he sought to ask on account of potential objections from the government. Mr. Hamett, in turn, acknowledged he was "not learned in the law" and would "be at a disadvantage in examining witnesses." *Id.* at 33:20-22, 34:23-35:1.

The trial court also ensured Mr. Hamett recognized he would need to tie the evidence he adduced to the elements of the charged offense and would need to present all of this in a closing argument. And while the court declined to read out the elements of the charges in this mid-trial context, it explained to Mr. Hamett that he could find the elements within the proposed jury instructions already in his and his counsel's possession. The trial court additionally highlighted the seriousness of the charges, specifying    albeit incorrectly    twenty years as the potential maximum term of imprisonment. And the court reiterated that Mr.

Hamett might stand a better chance of acquittal if he permitted his appointed counsel to present his case.

Despite its surprise at Mr. Hamett's last-minute gamble, the district court repeatedly sought to impress "the inherent difficulties of self-representation" upon Mr. Hamett. Still, Mr. Hamett clearly expressed his desire to pursue a trial strategy his appointed counsel evidently believed unwise. He responded affirmatively when the court asked: "It's really a strategic issue, right, isn't that correct, and you want to ask some questions they haven't asked[?]" *Id*. at 39:15-17. In my view, the trial court made obvious the dangers of self-representation. Having thereby fulfilled its duty under *Faretta*, the court then gave Mr. Hamett exactly the opportunity he sought, and then some. Not only did the district court permit him to direct his own defense; it also ensured standby counsel familiar with both facts and law could assist him.

\* \* \*

The majority opinion identifies three fatal shortcomings in the district court's *Faretta* colloquy and concludes that these shortcomings require reversal. In the view of the majority, the district court: (1) failed to ensure on the record that Mr. Hamett understood the charges against him; (2) misstated the maximum applicable sentence in the event of conviction; and (3) failed to discuss available

defenses to the charges.  I do not believe any of these objections to the colloquy warrant overturning Mr. Hamett's conviction.

It is true that the district court did not read aloud the jury instructions Mr. Hamett and his appointed counsel already possessed, and that   because the jury was waiting   the district court also did not allot him time to review the jury instructions silently.  That said, Mr. Hamett was represented by appointed counsel during the hearing, and his lawyers made no objection to the colloquy or the court's granting the request.  The district court also ensured that counsel remain on standby to assist the defendant with objections to the jury instructions.  Moreover, while the record suggests Mr. Hamett wanted more time to review the elements of the charged crimes, it also seems to suggest that he understood the nature of the charges.  His examination of witnesses and closing argument   much of which was devoted to the contention that he lacked the necessary "unlawful intent" to support a guilty verdict   demonstrates some level of understanding of both the elements of the crimes and the need for him to address those elements.

It is likewise true that the district court misstated the maximum applicable sentence in the event of conviction, indicating Mr. Hamett would face a maximum applicable sentence of twenty years   rather than life   in prison.  But while our precedents suggest a judge should remind a defendant seeking to represent himself what the possible sentence could be if his self-representation fails, no authorities

suggest the error here is so egregious as to be dispositive. Indeed, the error seems immaterial. As the government observes, the prospect of twenty years' imprisonment for the sixty-two-year-old Mr. Hamett amounted to constructive notice of the possibility he would spend the rest of his life in prison, if convicted. He effectively acknowledged the severity of his potential sentence (and the ramifications of his self-representation) by saying: "This is, as you put it, this is my life so I'm not going to play games." *Id*. at 388. The district court's error, then, did not undermine the knowing and intelligent nature of Mr. Hamett's scheme.

It is also true that the district court did not apprise Mr. Hamett of possible defenses. But the very fact that Mr. Hamett sought in the middle of his trial, no less to dismiss appointed counsel over differences in strategy suggests to me that he had settled on a strategy and, therefore, a defense and did not need to be apprised of others. In his closing argument, he raised a legal defense based on the elements of the charges arguing that he lacked the requisite unlawful intent to sustain a conviction for kidnapping. The fact that he raised such a defense, as dubious as it might have been, and not one prepared by his appointed counsel, indicates to me that Mr. Hamett raised the defense he had concluded best suited his interests. It was his right to choose that defense over any other, and it seems

problematic to provide him with a judicial mulligan simply because his preferred strategy ultimately proved unwise. *See Turner*, 287 F.3d at 983.

In my view, the district court provided Mr. Hamett exactly the latitude he sought to direct his own defense. All the shortcomings the majority opinion identifies with the *Faretta* colloquy can be attributed to the fact that Mr. Hamett waited until the middle of trial to dismiss his appointed counsel. Moreover, none of them were so material as to undermine the knowing and intelligent nature of the defendant's waiver. I accordingly think the circumstances excuse those shortcomings and respectfully dissent.