**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**June 24, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TYRONE LEROY OUTLEY,

    Defendant - Appellant.

No. 20-6005
(D.C. No. 5:17-CR-00254-F-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **KELLY**, and **EID**, Circuit Judges.
_____

During a trial related to various drug charges, Defendant Tyrone Leroy Outley requested to proceed pro se. The district court conducted a *Faretta* hearing, and found that Outley's Sixth Amendment waiver was voluntary, knowing, and intelligent. *See Faretta v. California*, 422 U.S. 806, 807 (1975). The jury convicted Outley. In this case, we conclude the district court did not err by finding a knowing and intelligent waiver because the totality of the circumstances demonstrates Outley was aware of the dangers and disadvantages of self-representation. We also find that

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the district court did not abuse its discretion in prohibiting Outley from introducing evidence of a traffic stop.  Accordingly, we affirm.

## I.

On March 15, 2017, two police officers, Sergeant Kleehammer and Sergeant Castlebury, saw a vehicle run through a stop sign in Oklahoma City.  After stopping the vehicle, Castlebury approached the driver's side while Kleehammer made contact with the passenger.  The passenger identified himself as Tyrone Outley, whom Kleehammer recognized from his time in the Gang Enforcement Unit when Outley fled from police at another traffic stop on February 20, 2017.  Kleehammer asked Outley to exit the vehicle.  Outley complied and an officer held Outley's hands behind his back to search his person.  At this point, Outley pulled away and ran.  After securing Outley, police arrested him.  On his person, police recovered a loaded firearm, 119 grams of crack cocaine, $335 in cash, and a cell phone.

A grand jury indicted Outley with (1) possession of cocaine base with intent to distribute (21 U.S.C. § 841(a)(1)), (2) possession of a firearm in furtherance of a drug trafficking crime (18 U.S.C. § 924(c)(1)(A)), and (3) felon in possession of a firearm (18 U.S.C. § 922(g)(1)).  On February 26, 2018, the district court granted the government's motion to have Outley's mental competency evaluated by a psychologist.  In that evaluation, the psychologist reported that there was no objective evidence to indicate that Outley suffered from signs or symptoms of a major mental disorder that would impair his ability to understand the nature and consequences of the court proceedings against him.  The psychologist found Outley

2

was competent to stand trial. At the competency hearing, both the government and defense counsel stipulated to the psychologist's findings. Based upon its review of the evaluation and these stipulations, the court found Outley competent to stand trial.

On June 11, 2018, Outley's first court-appointed counsel, Edward Blau, orally moved to withdraw as counsel. The district court granted the motion, finding an irreparable breakdown in the attorney-client relationship. The court appointed Joseph Wells as new counsel.

On October 9, 2018, the first day of trial, Outley requested new counsel. Outley claimed Wells "ha[d] not prepared any defense with [him]." R. Vol. I at 547. Wells explained that he had visited Outley in jail three times in four months, and that they met for a few minutes before trial, but each time, "things devolved not to talking so much about the case as to what [Outley] wasn't going to do." *Id.* at 550–51. Nonetheless, Wells claimed he was prepared for trial. The court denied the request, finding that Wells was adequate counsel.

On the second day of trial, Outley again requested to replace his counsel and then to represent himself. At this point, the district court initiated a *Faretta* hearing to determine whether Outley voluntarily and knowingly desired to waive his right to counsel. *Faretta*, 422 U.S. at 807. The court first asked, "Mr. McGarry (sic), am I correct in representing that it has come to the Court's attention that you want to represent yourself?" R. Vol. I at 636–37. Outley replied, "Yes. I'm Mr. Outley." *Id.* at 637. The court responded, "I mean Mr. Outley. Thank you." *Id.*

3

Next, the court asked Outley about his educational background, to which Outley said he had not graduated high school. The court also asked whether he had any previous experience with criminal trials. Outley stated, "I have been in hearings and heard cross-examinations over and over with this case." *Id.* Outley also pointed to experience in a few other cases filed against him in the past, but said he had never proceeded pro se or to trial.

The district court then asked, "Are you aware of the nature of the charges against you and any statutory offenses that may be included within them?" *Id.* at 639. Outley responded, "Yes, ma'am." *Id.* The court then asked him to recite those charges. Outley stated, "The nature of my charges? Felony offense on possession with intent to distribute cocaine base and being a felon in possession of a firearm in furtherance of a drug trafficking crime, which would be the possession with intent." *Id.* at 639–40. Outley had recited only two of the three charges, but the court did not follow up about the omission of the third charge. Instead, the court asked if Outley understood he must "follow all applicable rules of evidence and of procedure." *Id.* at 640. Outley responded that he understood.

The court also advised Outley, generally, of "the risks, the dangers, the disadvantages of proceeding pro se, or without a lawyer." *Id.* The court added: "You will be proceeding along in a very complex area where experience, where professional training are greatly to be desired, and any attorney might be aware of possible defenses to the charges that defendant is not." *Id.* at 640–41. The court also opined that "certainly as the judge in this matter, I believe it would be in the best

4

interest of you as the defendant to be represented by an attorney.  I can't make you do that." *Id.* at 641.  While the court later repeated to Outley that court-appointed counsel was in his best interest, Outley continued to assert that self-representation was his "only option," and that he believed he could effectively fight for his own rights.  *Id.*  The court then suggested appointing Wells as standby counsel, and Outley agreed.

At this point, before any waiver decision had been made, the district court permitted the government to ask Outley a few more questions.  The government then asked Outley if he understood that he was "charged with three crimes and not two crimes," emphasizing that he faced three separate charges: "One would be possession of cocaine base with intent to distribute, another is possession of a firearm in furtherance of a drug trafficking crime, and the third is being a felon in possession of a firearm." *Id.* at 645.  Outley responded, "I do understand . . . but do they not all count as one count?" *Id.*  The government replied, "No, sir.  They're actually separate counts with separate elements that need to be proven." *Id.*  As the government continued into another statement, Outley stopped it and stated, "Okay. Yes, I do understand." *Id.*  The government then specifically advised Outley of the penalties under Counts One, Two, and Three.  Throughout the government's inquiries, Outley continued to reiterate that he understood each item presented to him.  After some additional explanation, the government ended its inquiry.

The district court ultimately found Outley's waiver to be voluntary, knowing, and intelligent, and that he could "therefore represent himself pro se." *Id.* at 650.

The court appointed Wells as standby counsel and gave Outley an additional "period of time to prepare." *Id.* at 651. Outley then requested a continuance for more time to prepare, and after hearing argument from each side, the court denied the request. The jury convicted Outley on all charges.

Prior to sentencing, the Supreme Court issued *Rehaif v. United States*, holding that, in a conviction under 18 U.S.C. § 922(g), the "Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. 2191, 2200 (2019). In response, the government moved to dismiss Count Three because the jury was not properly instructed under *Rehaif*. The district court granted the motion. The court sentenced Outley to 360 months of imprisonment, followed by fifteen years of supervised release. Outley timely appealed.

## II.

### a.

We review "the validity of a waiver of the right to counsel de novo and the underlying factual findings for clear error." *United States v. Hansen*, 929 F.3d 1238, 1248 (10th Cir. 2019). Under this review, we note that harmless error is precluded from this case because acceptance "of an invalid waiver in violation of a defendant's Sixth Amendment rights necessarily leaves him entirely without the assistance of counsel at trial." *United States v. Allen*, 895 F.2d 1577, 1580 (10th Cir. 1990).

The U.S. Constitution guarantees every criminal defendant the right to assistance of counsel, which includes the "right to proceed without counsel when he

6

voluntarily and intelligently elects to do so." *Faretta*, 422 U.S. at 807. To determine whether a defendant effectively waived this right, we conduct a two-part test. *United States v. Taylor*, 113 F.3d 1136, 1140 (10th Cir. 1997). First, we examine whether the waiver was voluntary. *Id.* This prong is not implicated in this case. Second, we examine whether the waiver was made knowingly and intelligently. *Id.*; *see also United States v. Williamson*, 859 F.3d 843, 862 (10th Cir. 2017) (requiring courts to ensure the defendant is aware of the dangers and disadvantages of self-representation). This second prong is the focus of our analysis.

The "tried-and-true method" for a district court to assess whether a waiver is made knowingly and intelligently involves a "thorough and comprehensive formal inquiry of the defendant on the record," tailored to the particular circumstances of the case. *Hansen*, 929 F.3d at 1249. This inquiry—often called a *Faretta* hearing—takes place in the context of a waiver hearing, and is intended to ensure the defendant's comprehension of several factors, which include: "the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948); *see also Hansen*, 929 F.3d at 1250 (referring to these as the "*Von Moltke* factors").

While the district court plays a crucial role in conducting this process, the primary focus of the inquiry remains whether the defendant knowingly waived the right to counsel based on the totality of the circumstances, not the court's rote

7

satisfaction of the *Von Moltke* factors. *See Hansen*, 929 F.3d at 1251, 1253–54.

Before granting waiver, the district court's duty is to "ensure that a defendant's

waiver of counsel is knowing and intelligent." *Id.* at 1255. The court must

"investigate as long and as thoroughly as the circumstances . . . demand." *Von*

*Moltke*, 332 U.S. at 723–24. But the Supreme Court has not "prescribed any formula

or script to be read to a defendant who states that he elects to proceed without

counsel." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). We take a "pragmatic approach" in

"defining the means that a trial judge may use to reasonably ensure that the defendant

possesses such knowledge and understanding." *Hansen*, 929 F.3d at 1253 (citing

*United States v. Padilla*, 819 F.2d 952, 959 (10th Cir. 1987)); *see also Patterson v.*

*Illinois*, 487 U.S. 285, 298–300 (1988); *Hansen*, 929 F.3d at 1253, 1255 ("[We] do

not mandate a formalistic and rigid adherence to *Von Moltke*-related inquiries as the

sole means for determining whether a defendant's waiver . . . is knowing and

intelligent."). The district court is not "required in every instance to conduct a

comprehensive formal inquiry . . . in which it propounds queries to a defendant

regarding each and every *Von Moltke* factor in order to avoid reversal of its finding

that the defendant's waiver of the right to counsel was knowing and intelligent at the

time it was made." *Hansen*, 929 F.3d at 1254. Thus, while we certainly emphasize

the court's solemn duty to ensure the defendant's rights are knowingly and

intelligently waived, we look to the totality of the circumstances to determine

8

whether the defendant knowingly and intelligently waived his right to counsel.[1]  *See*

*id.* at 1255; *United States v. Turner*, 287 F.3d 980, 983 (10th Cir. 1987) (quoting

*United States v. Willie*, 941 F.2d 1384, 1389 (10th Cir. 1991)); *United States v. Vann*,

776 F.3d 746, 763 (10th Cir. 2015).

**b.**

Because this is a fact-intensive inquiry, we begin this analysis by thoroughly

reviewing the relevant facts from the *Faretta* hearing.  Before the hearing, the district

court had previously found Outley mentally competent to stand trial, relying upon a

medical professional, as well as the stipulation of counsel.  The court had already

granted a withdrawal request from Outley's first court-appointed counsel due to an

irreparable breakdown in the attorney-client relationship.  On the first day of trial,

Outley requested that Wells, his second court-appointed counsel, be dismissed,

arguing that Wells "has not prepared any defense with me."  R. Vol. I at 547–48.

Wells explained that he was indeed prepared for trial, that he had visited Outley a

number of times, but that Outley had not been cooperating.  The district court denied

---

[1] Outley points out that this court has previously stated that the *Von Moltke* factors "must be conveyed to the defendant *by the trial judge* and must appear on the record so that our review may be conducted without speculation."  *See Padilla*, 819 F.2d at 957 (emphasis in original) (citing *United States v. Gipson*, 693 F.2d 109, 112 (10th Cir. 1982), *overruled on other grounds by United States v. Allen*, 895 F.2d 1577 (10th Cir. 1990)).  But we rejected a similar contention in *Hansen*.  In that case, the defendant cited *Padilla* and *Gipson* for the proposition that the trial judge must explicitly inquire into all the *Von Moltke* factors on the record.  *Hansen*, 929 F.3d at 1253.  *Hansen* distinguished those cases by highlighting where each case acknowledged that the waiver-of-counsel inquiry used a "pragmatic approach," and is based on the totality of the circumstances, not any formal recitation or "precise litany" of the district court's language.  *See id.* at 1253–54.

the request. On the second day of trial, Outley again requested new counsel, and eventually requested that he represent himself. This request marked the start of the *Faretta* hearing.

To begin, the court asked Outley whether proceeding pro se was what he wanted to do. Outley responded with a clear, "Yes." *Id.* at 636. This remained Outley's answer throughout the hearing, despite several opportunities to change his mind and the court's repeated opinion that this was not in Outley's best interest. Outley later reiterated that self-representation was his "only option," and that he believed he could effectively fight for his rights pro se. *Id.* at 641. As relevant here, during the hearing, the court asked, "Are you aware of the nature of the charges against you and any statutory offenses that may be included within them?" *Id.* at 639. Outley responded, "Yes, ma'am." *Id.* The court asked him to recite those charges, and Outley stated: "The nature of my charges? Felony offense on possession with intent to distribute cocaine base and being a felon in possession of a firearm in furtherance of a drug trafficking crime, which would be the possession with intent." *Id.* at 639–40. Notably, instead of following up on Outley's omission of the third charge, the court continued on with other questions.

At this point, the district court permitted the government to ask Outley a few more questions. The government asked if Outley understood that he was "charged with three crimes and not two crimes," emphasizing that he faced three separate charges: "One would be possession of cocaine base with intent to distribute, another is possession of a firearm in furtherance of a drug trafficking crime, and the third is

10

being a felon in possession of a firearm." *Id.* at 645. Outley responded, "I do understand . . . but do they not all count as one count?" *Id.* The government replied, "No, sir. They're actually separate counts with separate elements that need to be proven." *Id.* Then, before the government could finish the next sentence, Outley replied, "Okay. Yes, I do understand." *Id.* The government then, with the court's permission, advised Outley of the penalties under Counts One, Two, and Three. At each step, Outley replied, "I understand." *Id.* at 648.

After a brief recess, the court found "that the defendant's waiver of his constitutional right to counsel is voluntary, it's knowing and it's intelligent." *Id.* at 650. The court thus found that Outley "may, therefore, represent himself pro se in this case." *Id.*

**c.**

The question in this case is whether the totality of the circumstances shows that Outley knowingly and intelligently waived his right to counsel. Considering the relevant facts surrounding the *Faretta* hearing, we conclude that Outley knowingly and intelligently waived his right to counsel, demonstrating a sufficient understanding of the *Von Moltke* factors.[2]

Throughout the hearing, Outley explicitly stated, in a variety of ways, that he understood the information being conveyed to him. In response to the court's initial

---

[2] We do not base our conclusion on the fact that the government moved to dismiss Count 3 because Outley was charged with all three counts at the time he deliberated to waive his right. *See id.* at 1269 (holding that a valid waiver must have been knowing and intelligent "at the time it was made").

inquiries, Outley told the court that he understood the need to follow all applicable rules of evidence and procedure and the use and purpose of standby counsel. *Id.* at 639 ("Okay. Yes, I do understand."). He said he understood that the district court was not advisory counsel. *Id.* ("I understand."). And he confirmed that he would continue pro se despite the risks, dangers, and disadvantages of proceeding pro se. *Id.* at 641 ("I can [proceed] pro se if allowed the time to prepare."). After Outley's initial confusion as to the third charge, the government clarified that he faced three individually separate counts, one of which was felon in possession of a firearm, and that each count required proof of separate elements, and Outley replied, "Okay. Yes, I do understand." *Id.* at 645. Outley said that he understood the penalties associated with Count 1. *See id.* ("Yes."); *id.* at 646 ("Yes, I do."); *id.* ("Yes, I do."). He said he understood the penalties associated with Count 2. *See id.* ("Yes, I do.."); *id.* ("I understand."); *id.* ("I understand."); *id.* at 647 ("Yes, I understand."). He said that he understood the combined effect of Count 1 and Count 2. *Id.* at 646–47 ("I understand."). He said he understood the penalties associated with Count 3. *Id.* at 647 ("I understand."); *id.* at 648 ("I understand."); *id.* ("I understand."). And he said that he understood the possibility of consecutive sentences for each count and the impact of advisory guidelines. *Id.* at 648 ("I understand."); *id.* ("I understand."). Outley also said he was familiar with the Federal Rules of Evidence, *id.* at 648, and that he understood he was obligated to follow them along with the Federal Rules of Criminal Procedure, *id.* at 648–49. Outley's own testimony provides a strong basis for our conclusion that Outley knowingly and intelligently waived his right to

12

counsel. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.").

The fact that the court itself did not convey Outley's third charge is not dispositive; rather, Outley's exchange with the government attorney was relevant and indicative of Outley's understanding. The primary inquiry here is still whether Outley knowingly and intelligently waived his right to counsel, not whether the district court performed any rote set of actions. *See Von Moltke*, 332 U.S. at 723–24. The court's duty here was to *ensure* that Outley understood those factors (*i.e.*, nature of the charges) before it made a final determination on the waiver issue. Here, the court's determination came after the government clarified that Outley faced three separate counts, one of which was felon in possession of a firearm, and after Outley replied, "Okay. Yes, I do understand." R. Vol. I at 645. Outley's understanding is not thwarted by the fact that the government, with the permission of the court, provided clarification. The court was simply not required to be the exclusive mouthpiece of each *Von Moltke* factor. *See Padilla*, 819 F.2d at 959 (viewing the waiver of counsel through a "pragmatic" lens). By allowing the government to clarify a potential oversight, the court was still able to fulfill its duty to ensure Outley understood the nature of the charges against him. Ultimately, the record reflects that Outley was brought to an appropriate understanding of the charges, and his own statements reflect this finding.[3]

---

[3] Considering the elements of the three charges, the charges are not particularly complex; their elements can readily be determined from their respective

13

In addition, Outley sufficiently understood the possible defenses to the charges, and we do not find that the particular circumstances required the court to provide a list of specific defenses because Outley demonstrated a sufficient awareness of the dangers and disadvantages of self-representation. *See Faretta*, 422 U.S. at 835; *United States v. Behrens*, 551 F. App'x 452, 457–58 (10th Cir. 2014) (unpublished) ("While the district court did not suggest any defenses, its failure to discuss that issue . . . does not warrant reversal because the . . . circumstances indicate that [he] understood his rights and the risk he was taking."); *United States v. Pawelski*, 651 F. App'x 750, 758 (10th Cir. 2016) (unpublished) (upholding a waiver where the district court "fail[ed] to explain potential defenses"); *United States v. Williamson*, 806 F.2d 216, 220 (10th Cir. 1986) ("We similarly find no merit in [the] contention that a valid waiver of counsel requires . . . an explanation of the possible defenses to the charge and a discussion of pretrial motions."); *but see United States v. Hamett*, 961 F.3d 1249, 1259 (10th Cir. 2020) (reversing a waiver where the court failed to ensure that the defendant understood the charges against him, misstated one of the maximum penalties, and failed to discuss available defenses). The court did warn Outley that "an attorney . . . might be aware of possible defenses to the charges that you . . . are not." R. Vol. I at 641–42.

---

descriptions. Thus, it was not necessary for the district court to delve into Outley's understanding of the particular elements. *Id.* at 1251 (noting as one of the factors to be considered in the totality of the circumstance "the complex or easily grasped nature of the charge") (quoting *Tovar*, 541 U.S. at 88).

But more importantly, Outley sought to dismiss his second counsel on the second day of trial, seemingly over differences in strategy, which suggests Outley had already settled on a strategy and did not need a specific list of defenses. *See id.* at 550 (Outley suggesting that he preferred examination questions different than those Wells had asked the witnesses); *id.* at 553 ("I have asked him and the private investigator for several things as far as my discovery in preperance (sic) for my defense, and they have failed to get anything that I have asked them to get in preperance (sic) for my defense."); *id.* at 651–52 (Outley requesting continuance, after his waiver of counsel, because "there was [sic] a lot of questions that were not asked on yesterday's trial date due to a stipulation agreement between [the government's counsel] and Joseph Wells that I did not agree to."); *see also Hamett*, 961 F.3d at 1266 (Tymkovich, C.J., dissenting) ("[T]he very fact that [he] sought in the middle of his trial, no less to dismiss appointed counsel over differences in strategy suggests to me that he had settled on a strategy and, therefore, a defense and did not need to be apprised of others."). And Outley had essentially "fired" his first counsel because he "w[ou]nd up having differences" with him. R. Vol. I at 642. Thus, the record demonstrates Outley sought to dismiss two attorneys, in part, because he did not agree with their individual plans with regard to his defense. In other words, Outley was not seemingly eager to hear a third individual (the judge) provide him with more suggestions as to how he should defend himself, and because of this, the court was not obligated to specify a list of defenses.

15

Finally, we find that Outley's waiver stands despite his personal background weighing against it. The question here is whether Outley's lack of education and history of mental health issues render Outley's waiver invalid under the circumstances. In his brief, Outley points to previous mental health issues, his education level, and his lack of criminal trial experience. However, regarding his asserted mental deficiencies, the court ordered a pretrial competency evaluation for a similar reason. There, a psychologist questioned Outley in depth about his understanding of the charges, penalties, defenses, courtroom procedures, and his ability to plan legal strategies and make relevant decisions. *See* Supp. R. Vol. II at 18–21. The psychologist found that Outley "exhibited an overall adequate understanding of the criminal charges" and even "accurately stated (in his own words) that he was charged with: 'Federally, possession with intent to distribute, felon in possession of a firearm, and enhanced to furtherance of a drug crime.'" *Id.* at 18. These findings, while not dispositive, point to a valid waiver. Additionally, the fact that Outley had an eleventh-grade education and limited experience in court does not override his clearly expressed desire to represent himself.[4] Outley also had

---

[4] Outley also adequately cross-examined government witnesses on several issues pertinent to his defense, including the lack of DNA or fingerprint evidence, the lack of video recordings or photographs, functionality of the firearm, and the source of the officer's knowledge of his gang membership. R. Vol. I at 694–95; *see Hamett*, 961 F.3d at 1262 n.8 ("[I]t is an open question in this circuit whether a defendant's trial conduct is material to the inquiry into whether a district court correctly concluded that a defendant's waiver of his right to counsel was knowing and intelligent at the time it was made.") (quotation marks and alterations omitted).

the advantage of standby counsel to help address questions he had for his defense, and any evidentiary rulings or continuance issues.

In conclusion, the totality of the circumstances shows that Outley knowingly and intelligently waived his right to counsel. Throughout the hearing, Outley continued to affirm that he understood what he was doing, that he appreciated the risks involved with his decision, and that he still wanted to proceed pro se. Thus, we affirm the district court's finding that Outley effectively waived his right to counsel.

## III.

Outley also argues that the district court abused its discretion by prohibiting him from introducing evidence relating to the traffic stop on February 20, 2017. We "review a district court's evidentiary rulings under Rule 404(b) for abuse of discretion." *United States v. Moran*, 503 F.3d 1135, 1143 (10th Cir. 2007). Thus, we "will not reverse a district court's ruling if it falls within the bounds of permissible choice in the circumstances and is not arbitrary, capricious or whimsical." *Id.* (internal quotation marks omitted). In determining whether to admit Rule 404(b) evidence, the district court must consider four factors, whether (1) the evidence is offered for a proper purpose; (2) the evidence is relevant; (3) the probative value of the evidence is substantially outweighed by its prejudicial effect under Rule 403; and (4) a proper limiting instruction can be given if requested by the defendant. *See Huddleston v. United States*, 485 U.S. 681, 691 (1988).

Before trial, the district court denied the government's motion in limine seeking to introduce evidence of the February 20, 2017, traffic stop, based on those

17

factors, particularly because the relevance and probative value of this evidence was "substantially outweighed by its prejudicial effect." R. Vol. I at 266–67; *see also id.* at 92–95. After the court allowed Outley to proceed pro se, Outley asked the court to reconsider allowing him to introduce the same evidence of the traffic stop. Ultimately, the court found:

> [T]he Court has ruled that any evidence about February 20th, 2017, is not admissible in this case. It is not coming in to be a part of the evidence of this case. The only new witnesses that the defendant has mentioned link to the February 20, 2017, incident. In light of the Court's prior ruling, any testimony by these witnesses are not relevant to this case.

*Id.* at 663.

Outley argues that the court erroneously applied its ruling to prohibit him from introducing the February 20 evidence because that ruling only addressed the government's purpose in presenting the evidence, and not his purpose, "which was to show that the officers had a motive for planting the weapons on him." Aplt. Br. at 36. Outley claims that his theory on the evidentiary relevance was that "the police officers . . . expressed a belief that [he] had gotten away with a criminal offense in February, and thus were more likely to have done whatever they could to implicate him in a criminal offense in March." *Id.* at 37.

However, the record fails to show that Outley expressed this purpose before the court. After the government argued that this evidence was irrelevant because "[h]e's not charged with the February 20th incident," Outley argued: "I'm not charged with a lot of things that these people have presented against me . . . . So I believe that it is relevant due to that fact." R. Vol. I at 661–62. While Outley had

18

expressed a general desire to question officers about the traffic stop and to call the fingerprint and DNA technicians that examined the weapons, Outley never provided a purpose behind these requests. At best, Outley's statements were too vague to put the court on notice of his "theory of relevance," and the court did not abuse its discretion in failing to address it. *See Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("Despite the liberal construction afforded to pro se pleadings, the court will not construct arguments or theories for [the pro se litigant].").

Additionally, even if the court somehow inferred Outley's purpose, the evidentiary relevance was outweighed by its prejudice because, as the district court found, the admission would have allowed the jury to infer that Outley possessed the firearm and drugs based on his flight from the officers. That prejudice still existed even if the evidence was admissible for a different purpose. Based on these concerns, we find that the district court did not abuse its discretion in prohibiting Outley from introducing evidence of the February 20 traffic stop.

**IV.**

For these reasons, we AFFIRM the judgment of the district court.

Entered for the Court


Allison H. Eid
Circuit Judge


19