**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 9 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOHN R. TAYLOR,

    Defendant-Appellant.

No. 98-6042

---

**Appeal from the United States District Court**
**for the District of Western District of Oklahoma**
**(D.C. No. CR-95-158-T)**

---

Submitted on the briefs.[*]

Patrick M. Ryan, United States Attorney, and Frank Michael Ringer, Assistant United States Attorney, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

Michael G. Katz, Federal Public Defender, and Vicki Mandell-King, Assistant Federal Public Defender, Denver, Colorado, for Defendant-Appellant.

---

Before **BRORBY, EBEL** and **HENRY**, Circuit Judges.

---

    [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9(G). The case is therefore ordered submitted without oral argument.

**BRORBY**, Circuit Judge.

Appellant John R. Taylor appeals his jury conviction following his waiver of counsel and *pro se* representation during the retrial of the charges against him. Mr. Taylor argues the district court erred in accepting his waiver of counsel and election to proceed *pro se* because he conditioned his election on access to a law library and legal materials which he did not receive. He also raises an issue of prosecutorial misconduct based on *United States v. Singleton*, 144 F.3d 1343 (10th Cir. 1998), ordered reheard en banc and opinion vacated, July 10, 1998, *id.* at 1361-62 (order). We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

PROCEDURAL BACKGROUND

The relevant facts relating to Mr. Taylor's first trial are set forth in *United States v. Taylor*, 113 F.3d 1136 (10th Cir. 1997). In short, the trial court granted Mr. Taylor's request to proceed *pro se* and represent himself at trial. *Id.* at 1138. Following the trial, the jury convicted Mr. Taylor for possession with intent to distribute cocaine base, conspiracy to possess with intent to distribute cocaine base, and possession of a firearm by a convicted felon. *Id.* at 1139. On appeal, this court reversed Mr. Taylor's conviction and remanded on grounds that: (1) the district court did not sufficiently establish Mr. Taylor knowingly and

intelligently waived counsel, and (2) insufficient evidence supported his firearm possession conviction. *Id.* at 1143-44, 1146.

On remand, the trial court appointed William Campbell as counsel to represent Mr. Taylor. At his arraignment, Mr. Taylor agreed to representation by Mr. Campbell. Later, in response to the trial court's written questions, Mr. Taylor stated he accepted Mr. Campbell's representation and services as his court-appointed counsel and did not intend to waive his right to counsel or represent himself *pro se*. However, one month later, Mr. Taylor entered an appearance as attorney for himself and an application drafted by his attorney, demanding to proceed *pro se*. At the same time, his counsel moved to withdraw from the case.

At a hearing on counsel's motion to withdraw, Mr. Taylor explained his counsel drafted his application to proceed *pro se* because he "had no access to a law library in the Oklahoma detention center." Mr. Taylor then stated he wanted another attorney. When the trial court asked for clarification on whether Mr. Taylor wanted another attorney or to represent himself, the following colloquy ensued:

> Mr. Taylor: Will I have access to a law library where I can be able to file my own – my motions and research my –
>
> The Court: Well, where are you housed right now; in the Oklahoma

-3-

County Jail?

Mr. Taylor: Yes, sir.

The Court: Do they have a law library there?

Mr. Taylor: No, sir.

The Court: Well, what's your choice if you had access to a law library? Do you want to represent yourself or do you want another lawyer to represent you?

Mr. Taylor: If I had access to a law library, I would represent myself, Your Honor.

....

[The Court]: ... But the first question ... I have to determine is whether you want to represent yourself under all circumstances. Even if I relieve Mr. Campbell of his responsibilities and then let him withdraw so he's no longer your lawyer, then the question is whether I'm going to need to appoint you a new lawyer, or if you demand, under those circumstances, to represent yourself.

Mr. Taylor: Well, I have no access to a law library. I have no – no way of getting no – no type of law material whatsoever. I have no place to – to type motions, to write motions, to research the motions, the – the orders, or nothing.

The Court: Well, your trial is set for Monday, you understand.

The Defendant: Yeah.

The trial court later asked:

Well, what's it going to be, Mr. Taylor: Do you ... think you're entitled to another lawyer to represent you?

Mr. Taylor: Well, ... if I had access to a law library and law materials, then I would proceed *pro se*.

The Court: I'm going to proceed with ... an explanation of matters pertinent to this issue, though it has been raised in a rather conditional way, for the primary reason of advising you, Mr. Taylor, of all the matters that you're entitled to be advised of with regard to the possibility of representing yourself, and then, once having done that, we'll come back to – to your conditional demand to represent yourself, that is, conditioned on your access to a law library.

The trial court then explained the presumption against waiver, and the requirements that Mr. Taylor's waiver be voluntarily, knowingly and intelligently made. In order to meet these requirements, the trial court examined Mr. Taylor as to his age, education, previous experience concerning his criminal trial, and work experience. The trial court then advised Mr. Taylor of the nature of the charges against him and the range of allowable punishments, as well as some of the possible defenses he could raise. The trial court also discussed the risks of proceeding *pro se*, explaining: (1) the requirement he follow the rules of evidence and criminal procedure and understand procedural and substantive law; (2) the elements of, and differences in, making opening and closing statements; and (3) the knowledge required to make objections to evidentiary and procedural matters, raise sufficiency of the evidence issues, ask witnesses questions, select a jury, and request jury instructions. The trial court further instructed Mr. Taylor that his request for *pro se* representation created a distinct disadvantage because he did not have the training and experience of a lawyer.

-5-

Following this discussion, the trial court asked Mr. Taylor if he understood what had been explained to him, and Mr. Taylor replied, "I understand, Your Honor." The trial court explained, and Mr. Taylor indicated he understood, that if the court granted Mr. Campbell's motion to withdraw, the next step would be to appoint new counsel. Asked if he still wanted to represent himself, Mr. Taylor stated:

> Well, what I'm saying, Your Honor, is if I can have access to the law material that I need, then I feel fully competent enough to represent myself in this matter. That's what I'm telling you. But if you have to advise [sic] another counsel, I will go that way, too.

Mr. Taylor then stated he and Mr. Campbell were not "getting along" based primarily on Mr. Campbell's failure to advise him of a request for postponement of the trial. A colloquy ensued between the trial court, Mr. Campbell, and the government's counsel, which established that Mr. Campbell requested postponement of the trial for a few days in order to allow him to obtain and review discovery the government inadvertently failed to produce. The trial court then explained to Mr. Taylor that his counsel filed the postponement in his best interest and that the appointment of another attorney would result in postponement of the upcoming trial. The trial court next ordered a recess to provide Mr. Taylor an opportunity to talk to Mr. Campbell concerning his options to continue to retain Mr. Campbell as counsel, request substitute counsel, or

represent himself – keeping in mind an honest misunderstanding occurred concerning Mr. Campbell's request for a postponement. Following a recess, Mr. Campbell stated he discussed Mr. Taylor's options with him and his need to make an election. Mr. Taylor then made the following election:

Mr. Taylor: I will proceed *pro se*.

The Court: All right. Now, Mr. Taylor, … not to beat this to death, but … you've heard all of the discussions and explanations and cautions that I've … given you, and you've had all that in mind, I take it, before you made this decision?

Mr. Taylor: Yes. I don't want to waive no more time, Your Honor. I want to just go on and get it over with.

The Court: Well, the trial starts Monday.

Mr. Taylor: Okay.

Following this colloquy, the trial court found Mr. Campbell competent as counsel and explained to Mr. Taylor his choice consisted of using competent counsel or proceeding *pro se*. Mr. Taylor again confirmed his desire to represent himself. The trial court concluded the hearing by determining Mr. Taylor voluntarily, knowingly and intelligently waived counsel and ordered Mr. Campbell's presence at trial for the purpose of providing Mr. Taylor with expert legal advice.

The following week, Mr. Taylor represented himself at trial and Mr.

Campbell stood by to aid to him as requested by the trial court. A jury subsequently convicted him of possession with intent to distribute cocaine base and conspiracy to distribute cocaine base. The trial court sentenced him to two concurrent 360-month terms in prison.

In a motion for a new trial, Mr. Taylor claimed the trial court denied him access to the courts because he lacked access to legal resources such as stamps, a typewriter, copies and law books. The trial court denied the motion as untimely and also found it baseless, concluding Mr. Taylor was not entitled to access to a law library because he knowingly and voluntarily waived his right to appointed representation by counsel.

On appeal, Mr. Taylor contends his choice to proceed *pro se* "was equivocal and not voluntary." He argues he conditioned his *pro se* request on his ability to access a law library and legal materials, and that the trial court failed to "follow up on this matter ... either to arrange for access to such materials, or to ask [him] whether he would choose to have Mr. Campbell represent him, or to proceed *pro se*, since his condition could not be met."

DISCUSSION

It is clear Mr. Taylor possessed the right to waive counsel and conduct his own defense in his criminal case. *Taylor*, 113 F.3d at 1140 (citing *Faretta v. California*, 422 U.S. 806, 821, 832 (1975)). However, in reviewing waiver of counsel, this court "will indulge in every reasonable presumption against waiver." *Id.* at 1140 (quoting *Baker v. Kaiser*, 929 F.2d 1495, 1500 (10th Cir. 1991)). In determining if Mr. Taylor effectively waived his right to counsel, we conduct a two-part inquiry to determine whether he: (1) voluntarily waived his right to counsel, and (2) knowingly and intelligently waived that right. *Id.* We review *de novo* whether Mr. Taylor's waiver of counsel is voluntary, knowing and intelligent. *Id.*

We begin by determining whether Mr. Taylor's waiver of counsel was voluntary. A defendant's waiver is involuntary if he is forced to choose between *incompetent* counsel or appearing *pro se*. *Taylor*, 113 F.3d at 1140. However, if a defendant's counsel is competent and defendant cannot establish good cause entitling him to appointment of new counsel, his waiver will be deemed voluntary. *Id.*

Applying this standard to the case at bar, the record clearly shows Mr. Taylor's primary complaint with Mr. Campbell's performance centered on his

general dissatisfaction with Mr. Campbell's request for a continuance of the trial, and not with the substance or quality of his legal representation. The district court found Mr. Campbell's postponement request in Mr. Taylor's best interest and concluded his performance was competent, thereby effectively denying Mr. Taylor's request to substitute counsel. The district court then advised Mr. Taylor of his two choices: either to be represented by a competent attorney or to appear *pro se*. Mr. Taylor elected to proceed *pro se.* Because Mr. Taylor failed to establish good cause entitling him to appointment of new counsel under the standard articulated in *United States v. Taylor*, we deem his decision to waive counsel voluntary. 113 F.3d at 1140.

Having determined Mr. Taylor voluntarily waived his right to counsel, we turn to the next inquiry. In determining whether Mr. Taylor knowingly and intelligently waived his right to counsel, we look to the record and the entire circumstances of the case, including Mr. Taylor's age and education, his previous experience with criminal trials, and his background, experience, and conduct. *Id.* (citing *United States v. Padilla*, 819 F.2d 952, 958 (10th Cir. 1987)). Waiver must be made with an apprehension of the nature of the charges, the statutory offenses, the range of allowable punishment, possible defenses to the charges, circumstances in mitigation, and all other facts essential to a broad understanding

of the whole matter.  *Padilla*, 819 F.2d at 956-57.  The trial court must "make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of *all the circumstances under which such a plea is tendered*."  *Taylor*, 113 F.3d at 1140-41 (quoting *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1947)) (internal quotations omitted & emphasis added).  In this case, the circumstances under which Mr. Taylor tendered his waiver of counsel plea include an examination of whether that plea was conditioned on law library access and whether such access was effectively afforded.

In the instant case, the trial court examined Mr. Taylor as to his age, education, previous experience concerning his criminal trial, and work experience.  The court advised Mr. Taylor of the nature of the charges against him, the range of allowable punishments and possible defenses, and thoroughly discussed the risks of proceeding *pro se.*  In addition, Mr. Taylor's waiver of counsel came after his prior experience of representing himself at his first trial. An examination of the hearing transcript clearly shows Mr. Taylor understood the risks and dangers associated with self-representation and nevertheless, plainly assented to proceed *pro se.*  Absent the issue of his access to a law library and legal materials, we conclude Mr. Taylor knowingly and intelligently waived his

-11-

right to counsel.

We now turn to Mr. Taylor's contention that the trial court erred in allowing him to proceed *pro se* because his request was conditioned on his access to a law library and legal materials. In viewing the totality of the circumstances surrounding his waiver, we acknowledge Mr. Taylor conditioned his desire to proceed *pro se,* in part, on access to a law library and legal materials.[2] However, while prisoners like Mr. Taylor have a right to adequate, effective and meaningful access to the courts, access to a law library is only one of many constitutionally acceptable methods used to assure meaningful access to the courts. *See Love v. Summit County*, 776 F.2d 908, 912-13 (10th Cir. 1985), *cert. denied* 479 U.S. 814 (1986), (determining pretrial detainee is not entitled to access to a law library if other available means to access the court exist) (quoting *Bounds v. Smith,* 430 U.S. 817, 830 (1977)). It is well established that providing legal counsel is a constitutionally acceptable alternative to a prisoner's demand to access a law library. *See Lewis v. Casey*, 518 U.S. 343, 350-51 (1996) (relying on *Bounds v.*

---

[2] We also note Mr. Taylor's prehearing application to proceed *pro se* did not mention any contingency concerning access to a law library or law materials, thereby indicating at least an initial desire to proceed *pro se* absent such a condition. It also appears Mr. Taylor's final decision to proceed *pro se* was based, in part, on his desire not to delay the trial in the event of substitution of counsel.

*Smith,* 430 U.S. at 830); *Love*, 776 F.2d at 914.

In this case, the trial court provided Mr. Taylor with court-appointed counsel, thereby providing him with a constitutionally acceptable means to access the courts. Despite this accommodation, Mr. Taylor nevertheless elected to waive counsel, but did so conditioning his *pro se* election on access to a law library. The trial court, cognizant that the Oklahoma county jail contained no law library, ordered court-appointed counsel to stand by to provide Mr. Taylor expert legal assistance during his *pro se* representation. In providing standby counsel, the trial court no doubt recognized the potentially excessive burden Mr. Taylor's demand for law library access would place on jail officials.[3] While Mr. Taylor expressed some displeasure about Mr. Campbell sitting at counsel's table with him at trial, he nevertheless was fully aware legal assistance was available.

While it would have been preferable for the trial court to make an explicit ruling on Mr. Taylor's demand for law library access, we nevertheless conclude

---

[3] *See, e.g.*, *United States v. Robinson*, 913 F.2d 712, 717 (9th Cir. 1990) (concluding that a *pro se* defendant's right of access to resources to aid in his defense must be balanced against security considerations and limitations of penal system); *United States ex rel. George v. Lane*, 718 F.2d 226, 232-33 (7th Cir. 1983) (holding that burden of transporting and supervising pretrial detainee's access to law library would be intolerable).

that the trial court provided Mr. Taylor with the equivalent of his library access demand when it ordered counsel to assist him at trial. By ordering standby counsel, the trial court provided Mr. Taylor with expert legal assistance which included access to any relevant legal materials obtainable through counsel. By providing such assistance, the trial court fully met Mr. Taylor's condition in proceeding *pro se*.[4]

Although the trial court met Mr. Taylor's condition for proceeding *pro se* through appointment of standby counsel, we underscore our belief that the trial court was under no obligation to provide law library access to Mr. Taylor and could have expressly denied Mr. Taylor's request without any constitutional infraction. In so concluding, we announce our agreement with those circuits holding that a prisoner who voluntarily, knowingly and intelligently waives his right to counsel in a criminal proceeding is not entitled to access to a law library or other legal materials. *See United States v. Chatman* 584 F.2d 1358, 1360 (4th Cir. 1978); *Degrate v. Godwin*, 84 F.3d 768, 769 (5th Cir. 1996); *United States v. Smith*, 907 F.2d 42, 45 (6th Cir.), *cert. denied*, 498 U.S. 986 (1990); *United States*

---

[4] We recognize appointment of an advisory counsel does not relieve the trial court of its duty to ensure a defendant's waiver of counsel is knowingly and intelligently made. *See Taylor*, 113 F.3d at 1144 n.2. However, in this case, the trial court's appointment of standby or advisory counsel merely met a condition raised by Mr. Taylor in electing to waive counsel.

*v. Lane*, 718 F.2d at 233 (7th Cir. 1983); *Kelsey v. State of Minnesota*, 622 F.2d 956, 957-58 (8th Cir. 1980); *United States v. Wilson*, 690 F.2d 1267, 1271-72 (9th Cir. 1982), *cert. denied*, 464 U.S. 867 (1983). This comports with our holding that pretrial detainees are not entitled to access to a law library if other available means exist to access the court. *See Love*, 776 F.2d at 912-13. In cases where, as here, the issue of access to legal research materials overlaps with the waiver of counsel process, we agree with the Ninth Circuit that there is nothing constitutionally offensive about requiring a defendant to choose between appointed counsel and proceeding *pro se* without access to legal materials because "the sixth amendment is satisfied by the offer of professional representation alone." *Robinson*, 913 F.3d at 716.

As to Mr. Taylor's other issue, he relies on *United States v. Singleton*, 144 F.3d 1343 (10th Cir. 1998), for the proposition that the government's plea bargain agreements with his co-conspirators, who later testified against him, amounted to prosecutorial misconduct. However, on July 10, 1998 this court vacated that opinion and ordered the appeal reheard en banc. *See Singleton*, 144 F.3d at 1361-62 (order); *see also United States v. Singleton*, 165 F.3d 1297 (10th Cir.) (en banc), *cert. denied* 1999 WL 185874 (U.S. Jun. 21, 1999) (No. 98-8758). Thus, the proposition of law on which Mr. Taylor relies to support his position no

longer stands and needs no further discussion.

For these reasons, we **AFFIRM**.