FILED
United States Court of Appeals
Tenth Circuit

December 9, 2022

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

SCOTT RAY BISHOP,

    Defendant - Appellant.

No. 21-4085
(D.C. Nos. 2:20-CV-00777-DBB &
2:16-CR-00662-DBB-1)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

A jury convicted Scott Ray Bishop of one count of Unlawfully Engaging in the

Business of Manufacturing Machineguns, in violation of 26 U.S.C. § 5861(a), and

one count of Illegal Possession and Transfer of Machineguns, in violation of

18 U.S.C. § 922(o).  The district court sentenced him to 33 months' imprisonment,

followed by 36 months' supervised release.  We affirmed his conviction.  *United*

*States v. Bishop*, 926 F.3d 621, 633 (10th Cir. 2019).

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Mr. Bishop then filed with the district court a pro se motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The district court denied his motion and denied him a certificate of appealability (COA). He appealed, and we granted a COA on the following issues:

> (1) Whether Mr. Bishop voluntarily, knowingly, and intelligently waived his right to counsel at trial.
>
> (2) Whether Mr. Bishop's counsel on direct appeal provided ineffective assistance of counsel by failing to raise the issue of whether he voluntarily, knowingly, and intelligently waived his right to counsel at trial.

We appointed counsel for Mr. Bishop, who has ably briefed these issues on his behalf.[1] Upon consideration, we affirm the district court's judgment.

## BACKGROUND

### 1. The *Faretta* Hearing

In *Faretta v. California*, 422 U.S. 806 (1975), the Supreme Court held that a defendant in a state criminal trial has the right to represent himself, which he may exercise by voluntarily and intelligently waiving his right to counsel. *See id.* at 835-36. Prior to trial, Mr. Bishop's appointed counsel filed a motion for a *Faretta* hearing, to ensure that Mr. Bishop's waiver of counsel was knowing and intelligent.

---

[1] Mr. Bishop has also sought a COA on a third issue:

Defendant was denied his Sixth Amendment Constitutional Right to Assistance of Counsel when his court-appointed Counsel failed to investigate witnesses, failed to investigate the only viable defense available to Defendant, and failed to take seriously Defendant's claim of actual innocence.

COA Appl. at 5. We deny a COA concerning that issue.

2

The district court held the requested hearing about a month before the scheduled trial date.

The district court first confirmed that Mr. Bishop desired to represent himself in the upcoming trial. It then asked him if counsel had explained the disadvantages to representing himself. He responded that he "belie[ved] they ha[d] been very clear about them." R., Vol. 3 at 4. The district court then inquired why Mr. Bishop wanted to handle his own defense. He responded,

> Your Honor, I believe that I have the ability and maybe the more clear vision of my defense and how I would like to proceed on that. My counsel have been great. They have been very good to work with, but I think there are things that I would like to present that I am not sure that they can present in the way that I would like to.

*Id.*

The district court informed Mr. Bishop he would be required to comply with court rules at trial, including the rules of procedure and the rules of evidence, and that this could put him at a disadvantage because he is not a trained lawyer. It asked him if he understood the disadvantages these procedures posed for someone representing himself who is not familiar with them, to which Mr. Bishop responded, "I believe I do, Your Honor." *Id.*

The district court turned to Mr. Bishop's background. Mr. Bishop informed the court that his only background in the law was from "personal study." *Id.* at 5. He also said he had been through a jury trial once before about five or six years previously, where he represented himself as a defendant in a state-court traffic-offense trial and the jury acquitted him.

3

The district court asked whether Mr. Bishop felt he had "studied this issue enough to believe that [he was] knowingly and intelligently forgoing the benefits of counsel," to which Mr. Bishop responded, "Yes." *Id.* at 6. In response to further questions Mr. Bishop told the court he was in good mental and physical health and understood the nature of the charges against him.

The district court next identified the two charges alleged in the indictment, but it did not specify the elements of those charges. It did ask Mr. Bishop whether he understood the elements of the charges and the nature of the government's burden of proof, to which he responded, "I believe so, Your Honor." *Id.* at 7. He also said he believed he knew how to give an opening statement and knew how to present a closing argument.

The district court asked Mr. Bishop if he was familiar with Abraham Lincoln's "sage advice" that "only a fool has himself for a client." *Id.* at 8. Mr. Bishop said he agreed with that opinion. The district court then encouraged him to "reconsider having these fine lawyers represent [him]," even though he was "not sure that they can present what [he] want[ed] to present the same way that [he felt he could]." *Id.* at 8-9. It acknowledged Mr. Bishop's right to represent himself, but urged him to "think hard about it, because there are a lot of advantages to having a trained lawyer whose only job is to do what is in your best interest in representing you before a jury." *Id.* at 9. Mr. Bishop stated he would like to have his attorneys stay on as standby counsel.

The district court asked both defense counsel and the government if they had any concerns about Mr. Bishop representing himself. His counsel stated they had "been meeting with Mr. Bishop often to prepare for his defense, and we think that he has really thought this over." *Id.* at 10. They noted his choice went "against maybe our advice" but that they "respect[ed] his decision to exercise his right to represent himself." *Id.* The government stated it was "certainly a dangerous move by the defendant," *id.*, and asked the district court to have Mr. Bishop "indicate for the record that he has been represented by competent counsel and understands that they are competent lawyers." *Id.* at 11. The district court conducted the following colloquy on that issue:

> THE COURT: Do you have any concerns about the representation that you have received from [counsel] to date?
>
> MR. BISHOP: No, absolutely not, Your Honor. They have been great.
>
> THE COURT: Do you feel that you have had sufficient opportunities to meet with them and ask them all of the legal questions that you have wanted to ask them about this case?
>
> MR. BISHOP: I do, Your Honor.
>
> THE COURT: You're satisfied with their representation of you?
>
> MR. BISHOP: Yes, Your Honor.
>
> THE COURT: You just don't want them to continue?
>
> MR. BISHOP: Correct, Your Honor.

*Id.*

The parties discussed the logistics of having counsel serve as standby counsel for Mr. Bishop, which the court permitted. After the government's counsel expressed

his opinion that "the Court has fully complied with the *Faretta* requirements," *id.* at 15, the district court made the following, relevant findings:

> THE COURT: [P]ursuant to the guidance from the United States Supreme Court in *Faretta versus California*, I find that Mr. Bishop is competent to represent himself. From my discussion with him today, he appears to knowingly and intelligently understand the charges against him, and also knowingly and voluntarily wishes to waive his right to have appointed counsel and to represent himself in the upcoming trial. I am satisfied that he is aware of the dangers and disadvantages of self-representation and that he knows what he is doing and that this is his choice and his alone.
>
> I have warned him against it and I am satisfied that he understands that warning and appreciates the pitfalls that may await him in his effort to represent himself.

*Id.* at 15-16.

## DISCUSSION

For a defendant to effectively exercise his right to self-representation, the district court must "assess whether [the] waiver is being made knowingly and intelligently," *United States v. Hamett*, 961 F.3d 1249, 1255 (10th Cir. 2020). "[T]he true test for an intelligent waiver turns not only on the state of the record, but on all the circumstances of the case, including the defendant's age and education, his previous experience with criminal trials, and representation by counsel before trial." *United States v. Vann*, 776 F.3d 746, 763 (10th Cir. 2015) (internal quotation marks omitted). The district court's failure to ensure that a waiver of counsel at trial was knowingly and intelligently made is so basic to a fair trial that where such a failure has been established, we do not ask whether the error was harmless. *See, e.g.*, *United States v. Taylor*, 113 F.3d 1136, 1144 (10th Cir. 1997); *United States v. Allen*, 895 F.2d 1577, 1579-80 & n.1 (10th Cir. 1990).

6

This court reviews the district court's decision concerning the validity of the waiver de novo and its underlying factual findings for clear error, "indulg[ing] in every reasonable presumption against waiver." *Hamett*, 961 F.3d at 1255. To determine whether a defendant has effectively waived his right to counsel, courts apply a two-part test. *See id.* The court asks first whether the defendant waived his right to counsel voluntarily, and second whether the waiver was made knowingly and intelligently. *See id.* Only the second element is at issue here.[2] In making this second assessment, the "tried-and-true-method" of factual development is for the district court "to conduct a thorough and comprehensive formal inquiry of the

---

[2] Mr. Bishop argued in his pro se COA application that his waiver was involuntary because he was forced to choose between proceeding with incompetent counsel or appearing pro se. Appointed counsel has not renewed that argument. In any event, it lacks merit. The district court rejected the argument because it determined Mr. Bishop had failed to show his counsel was "incompetent." *See United States v. Taylor*, 183 F.3d 1199, 1203 (10th Cir. 1999) ("[I]f a defendant's counsel is competent and defendant cannot establish good cause entitling him to appointment of new counsel, his waiver will be deemed voluntary."); *see also United States v. Williamson*, 859 F.3d 843, 862 (10th Cir. 2017) (to show an involuntary waiver based on a choice between incompetent counsel or appearing pro se, a defendant must first "demonstrate[] good cause warranting the appointment of new counsel"). Considering the sound reasons the district court gave for rejecting Mr. Bishop's ineffective-assistance claim, we agree. In addition, we note that Mr. Bishop's statements at the *Faretta* hearing undermine his assertion that he was forced into the waiver. At the hearing he stated that he had "the ability and maybe the more clear vision of my defense and how I would like to proceed on that." R., Vol. 3 at 4. He said his counsel had been "great" and "very good to work with," but he claimed there were "things that I would like to present that I am not sure that they can present in the way that I would like to." *Id.* He also acknowledged he was "satisfied with their representation" of him but said that he "just [didn't] want them to continue." *Id.* at 11.

defendant on the record" through a *Faretta* hearing.  *Id.* (internal quotation marks omitted).

Although "the knowing and intelligent nature of the waiver of the right to counsel turns on the totality of the circumstances," using a "pragmatic approach," *United States v. Hansen*, 929 F.3d 1238, 1251 (10th Cir. 2019) (internal quotation marks omitted), we have recognized a number of individual factors that bear on that totality inquiry, sometimes referred to as the "Von Moltke factors," *see Von Moltke v. Gillies*, 332 U.S. 708 (1948) (plurality opinion)).  Generally, to be valid, a defendant must make his waiver with an understanding of "the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter."  *Hansen*, 929 F.3d at 1250 (emphasis and internal quotation marks omitted); *see also Von Moltke*, 332 U.S. at 724.  That said, our focus is on whether the defendant knowingly waived the right to counsel based on the totality of the circumstances, not on rote satisfaction of each of the Von Moltke factors.  *See Hansen*, 929 F.3d at 1251, 1253-54.  And even in the absence of an adequate colloquy, there may be "case-specific factors" that permit us to conclude that the waiver was knowing and intelligent when the defendant made it.  *Hamett*, 961 F.3d at 1260.

Mr. Bishop challenges the sufficiency of the district court's inquiry, both in general and relating to specific relevant factors.  Because the district court's inquiry was sufficient and because the colloquy in its totality and the surrounding facts and

circumstances established that Mr. Bishop made a knowing and intelligent waiver of his right to counsel, we affirm.

### 1. Obligation to Comply with Court Rules

Although he acknowledges that the district court told him he would need to comply with its rules and procedures, and that he would be at a disadvantage because he had not been trained concerning those procedures, Mr. Bishop contends this general warning was insufficient to ensure a knowing and intelligent waiver. He argues the district court never confirmed that he understood the court's procedural rules, that he would be required to comply with them, that they would not be relaxed for his benefit, and that the court would not help him to comply with them. Our review, however, persuades us that the district court adequately explored this factor.

Mr. Bishop points to an ambiguity in his response to the court's inquiry about his responsibility to comply with court rules. The court first asked him whether he was aware that he would be required to comply with the court rules. Before he answered that question, it then asked him whether he understood the disadvantages that the rules pose to someone who represents himself and is not trained in those procedures. Mr. Bishop responded, "I believe I do, Your Honor." R., Vol. 3 at 4.[3]

---

[3] Mr. Bishop answered several questions at the *Faretta* hearing with "I believe I do" or an equivalent expression. In his pro se COA application, he argued these responses did not establish his understanding because "'I do' and 'I believe so' are not functional equivalents." COA Appl. at 11. His counseled briefs appear to renew this argument. *See, e.g.*, Aplt. Opening Br. at 24; Aplt. Reply Br. at 6. But the argument lacks merit. Admittedly, on a cold record, a response of "I believe I do" could be deemed ambiguous. If pronounced with determination, it could represent a strongly affirmative response, but if pronounced with trepidation or uncertainty, it

Mr. Bishop argues he never answered the first question, and therefore never demonstrated he understood his need to comply with court rules. But the clear import of his response to both questions was affirmative. The questions were interrelated, in fact, because court rules pose little disadvantage to a defendant if he is not required to follow them.

Next, contrary to Mr. Bishop's contention that the district court gave him only general advisements about the rules he would have to follow, the court referred specifically to the rules of procedure and the rules of evidence. Mr. Bishop cites *United States v. Hamett* for the proposition that "general warnings" of the dangers of self-representation do not establish a knowing and intelligent waiver, *see* 961 F.3d at 1259. *Hamett* cited *Hansen*'s discussion of the need to adequately advise the defendant of his obligation to adhere to the federal rules, *see id.*, and the facts in *Hansen* actually provide a useful point of comparison with this case.

In *Hansen*, the district court asked the defendant if he understood "that in a legal proceeding there are rules that the court will follow and will require that all of

---

could indicate just the opposite. But the district court, and not this court, was the proper court to determine whether such an ambiguity existed, based on its observations of Mr. Bishop's demeanor, tone, and credibility. The district court did not find any such ambiguity, *see* R., Vol. 3 at 15-16 (district court findings), and Mr. Bishop points to nothing to suggest one beyond the cold record. *Cf. generally Lough v. Brunswick Corp.*, 103 F.3d 1517, 1534 n.9 (Fed. Cir. 1997) (Rader, J., dissenting from denial of en banc rehearing) ("What does a witness mean by the answer, 'I believe so.' Is this assent to the proposition? Is this an expression of doubt in the proposition? . . . An appellate tribunal is simply not equipped in time or tools to unlock the mysteries of [a statement like] 'I believe so.'[]" (internal quotation marks omitted.) Therefore our system assigns such issues to the finder of fact, not an appellate court.).

the parties before the court follow," to which he responded "Yes." *Hansen*, 929 F.3d at 1246 (internal quotation marks omitted). But when the court followed up by asking him if he understood that he, personally, would be required to comply with the rules of procedure and evidence, the defendant answered, "No," and then he continued with a string of irrelevant contentions. *Id.* (internal quotation marks omitted). On appeal, this court noted that if the first "yes" had been the only answer given, it might have been sufficient to conclude that the district court adequately warned the defendant of his need to comply with court rules. *See id.* at 1259. The problem was with the second, negative answer and the defendant's irrelevant statements that followed it. *See id.* at 1259-60. But no similar facts are present in this case. The colloquy here more closely resembles the first scenario we described in *Hansen*, where the defendant gave only an affirmative answer.

Mr. Bishop also complains that the district court did not specifically inform him that the rules would not be relaxed for his benefit and that he would receive no help from the court in following its rules and procedures. But the court made it clear to him that he would be at a disadvantage in representing himself because he was not a trained lawyer and was not familiar with the rules. It thus adequately conveyed that he could not expect to receive its help in following the rules and that they would not be relaxed for his benefit. *See Hamett*, 961 F.3d at 1259 n.5 (noting that "no precise litany is prescribed" for this factor (brackets and internal quotation marks omitted)).

11

### 2. Nature of the Charges

The district court described the charges in the indictment and asked Mr. Bishop whether he understood the elements of those charges and the government's burden of proof, to which he responded affirmatively. But Mr. Bishop contends the district court was required to go further by ensuring he understood the statutory definition of a machinegun, which was a key issue at trial. We disagree.

It is true that "[a] proper *Faretta* hearing apprises the defendant of . . . all other facts essential to a broad understanding of the whole matter." *Id.* at 1255 (internal quotation marks omitted). And terms used in stating the elements of an offense may have specialized or technical definitions that are not readily apparent to a layman. But Mr. Bishop fails to show that a court is required to provide a detailed explanation of the meaning of statutory terms and to ensure the defendant's understanding of and ability to apply those terms, before concluding that his exercise of the right to defend himself is knowing and intelligent. *Cf. Faretta*, 422 U.S. at 836 (stating defendant's "technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself"); *see also United States v. Williamson*, 806 F.2d 216, 220 (10th Cir. 1986) (rejecting argument "that a valid waiver of counsel requires an explanation of the law of aiding and abetting"). The district court's inquiry was sufficient.

### 3. Potential Defenses

Mr. Bishop argues he was never adequately advised of the possible defenses to the charges, including whether his kit matched the federal definition of a

12

machinegun. Where the "surrounding facts and circumstances . . . permit[] us to conclude that the defendant's waiver was valid," the waiver may be knowing and intelligent "even though the district court did not suggest any defenses." *Hamett*, 961 F.3d at 1259 (internal quotation marks omitted). Among these facts and circumstances are the defendant's "acknowledg[ment] that he understood the nature and elements of" the charged crimes. *Id.* (internal quotation marks omitted). Another relevant circumstance arises when the defendant has settled on a specific strategy, particularly when he has already resisted alternative strategies proposed by counsel. *See id.* at 1266 (Tymkovich, C.J., dissenting) ("[T]he very fact that [the defendant] sought . . . to dismiss appointed counsel over differences in strategy suggests to me that he had settled on a strategy and, therefore, a defense and did not need to be apprised of others."). Both these factors are present here. *See* R., Vol. 3 at 4, 6-7, 10-11. And Mr. Bishop had also discussed this case in depth with his counsel. Under the circumstances, the district court's failure to advise Mr. Bishop of potential defenses does not mean his waiver was not knowing and intelligent.

### 4. Possible Punishments

Mr. Bishop argues the district court did not advise him during the *Faretta* hearing of the penalties he faced. As the district court acknowledged, although Mr. Bishop had previously been advised on the record at arraignment of the penalties he faced, the trial judge should have reminded Mr. Bishop of this fact during the *Faretta* hearing. *See* R., Vol. 4 at 88. Given our pragmatic approach, however, we cannot say this failure to provide a reminder of these penalties meant that

Mr. Bishop's waiver was not knowing and intelligent.  Mr. Bishop's reliance on *Hamett*'s requirement that the defendant be "advised and fully aware of the charges against him at [the] pivotal time—when he was deciding whether to waive his right to counsel and proceed pro se," 961 F.3d at 1257, is misplaced here.  The facts here are significantly different than in *Hamett*.  *See id.* at 1257-58.  Here, the district court cited specific evidence that Mr. Bishop was previously advised of the maximum penalties for his offense and stated he understood them on the record.  *See* R., Vol. 4 at 88.

### 5.  Ineffective Assistance of Appellate Counsel

Because Mr. Bishop's *Faretta*-based claim lacks merit, his appellate counsel was not ineffective in failing to raise the claim on direct appeal.  *See Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) ("[O]f course, if the issue is meritless, its omission will not constitute deficient performance.").

## CONCLUSION

The totality of the circumstances demonstrates that Mr. Bishop was aware of the dangers and disadvantages of self-representation and voluntarily, knowingly, and intelligently elected to represent himself at trial.  We therefore affirm the district court's judgment.

Entered for the Court

Gregory A. Phillips
Circuit Judge

14